[No. 5313.   Decided March 15, 1905.]

# J. T. HEFFERNAN, *Respondent*, v. THE UNITED STATES FIDELITY & GUARANTY COMPANY, *Appellant*.[1]

CONTRACTS—BUILDING HULL OF VESSEL—SPECIFICATIONS PART OF CONTRACT. A contract to build the hull of a vessel in accordance with specifications attached, includes superstructure to be built on the main deck, masts, rigging and other equipment particularly enumerated as part of the hull in the specifications.

INDEMNITY—PRINCIPAL AND SURETY—CONTRACTOR'S BOND TO COMPLETE VESSEL—NOTICE OF DEFAULT—FAILURE TO GIVE WITHIN TIME—RELEASE OF SURETY—DEMURRAGE FOR DELAY. Where a contractor's indemnity bond provided that notice of any ·default by the contractor must be given the surety within thirty days, and the contract provided that the hull of the vessel should be ready for machinery September 15, and completed ready for trial October 15, and notice of default in both particulars was given October 17, together with a demand that the surety complete the contract, the failure to give notice of the first default within thirty days releases the surety from liability for the demurrage charged for the non-completion of the vessel on time, since the law cannot say how much of the demurrage would have been saved by timely notice; but the surety is not released from liability for the cost of completing the vessel, where it refused to complete the same and where the failure to give notice of the first ·default did not affect the relation of the surety with reference to the second default; since a compensated surety can only insist upon forfeiture clauses where the failure to comply therewith probably inflicts a loss on the surety.

Appeal from a judgment of the superior court for King county, Griffin, J., entered May 18, 1904, upon findings

[1]Reported in 79 Pac. 1095.

in favor of the plaintiff after a trial on the merits before
the court without a jury, in an action upon an indemnity
bond.    Reversed.

*James B. Murphy,* for appellant.

*Ira Bronson* and *D. B. Trefethen,* for respondent.

FULLERTON, J.—In 1902, the respondent, Heffernan,
contracted with the Port of Portland to build and equip
for it a tug.boat, to be known as the "John McCracken,"
according to plans and specifications furnished him by that
corporation.    The respondent sublet a part of the work to
the defendant Ballard Dry Dock & Ship Building Com-
pany.    The contract was in writing, and expressed in the
form of a letter addressed to the respondent by the de-
fendant, and an acceptance of the proposition therein con-
tained by the respondent.    In the letter the Ballard Dry
Dock & Ship Building Company offered "to build the hull
of the steamer John McCracken, according to the draw-
ings submitted and specifications attached, including all
terms and conditions therein, for the sum of eight thou-
sand six hundred dollars.    .   .   ."    Attached to the let-
ter were the specifications of the hull, as furnished the
respondent by the Port of Portland; these having been
submitted to the company by the respondent at the time of
the negotiations leading up to the contract.    The contract
was dated July 23, 1902.    The specifications provided,
under the title, "General Conditions," among other things,
that the "hull house and equipment are to be furnished by
the hull contractor," and that the hull should be ready for
machinery September 15, 1902, and completed ready for
trial, October 15, 1902.    Then followed, under the title
"Specifications of Hull," specifications for the construc-
tion and equipment of a steam sea-going vessel, complete
with the exception of the engines and boilers.

The respondent exacted, of the ship building company, surety for the faithful performance of the contract, as a condition precedent to his entering into it. The ship building company offered the appellant as such surety, and, on being accepted as such, it gave a bond in the amount of the contract price, conditioned that it would save harmless the respondent from any pecuniary loss resulting from the breach of any of the terms, covenants, or conditions of the contract, on the part of the ship building company to be performed. The general condition was, however, subject to several provisos, among which was the following:

"First—That no liability shall attach to the surety hereunder unless, in the event of any default on the part of the principal in the performance of any of the terms, covenants or conditions of the said contract, the obligee shall promptly upon knowledge thereof, and in any event not later than thirty days after the occurrence of such default, deliver to the surety at its office in the city of Baltimore, written notice thereof with a statement of the principal facts showing such default and the date thereof; nor unless the said obligee shall deliver written notice to the surety at its office aforesaid before making to the principal the final payment provided for under the contract herein referred to."

The ship building company failed to carry out its contract, and the respondent was compelled to build and equip the hull at his own cost. In doing so he paid for labor and materials the sum of $1,616.50 in excess of the contract price, and $1,029.15 as demurrage to the Port of Portland because of his failure to deliver the vessel on the contract time, making a total of $2,645.65 more than the contract price. .This action was brought to recover from the ship building company and the appellant the amount so paid. Judgment went against them for the amount claimed, and this appeal is from that judgment.

The appellant first contends that the recovery allowed for the excess of labor and materials is too large, in that the court allowed a recovery for the costs of the superstructure built on the main deck, the masts and their rigging, the life boats, compass, and other equipments used about a ship, which, it argues, can be no part of the "hull" of a vessel, and cannot, therefore be included within a contract for the construction of a "hull." Had the contract of the Ballard Dry Dock & Ship Building Company been for the construction of the hull of a steam vessel without further specification, it may be that the appellant could successfully claim that the furnishings above enumerated would not fall within the descriptive term. But such was not its contract. It contracted "to build the hull of the steamer John McCracken according to   .   .   .   specifications attached," and the furnishings mentioned were specially and particularly enumerated as a part of the hull in the specifications attached to the contract. These specifications, therefore, became as much a part of the contract by this reference as they would have been had they been especially incorporated in it; and being thus a part of the contract, it can make no difference what the heading was, under which they were designated.

The other contention is that appellant was relieved from its liability because of the failure of the respondent to give it timely notice of the breach of the contract on the part of the ship building company. By the terms of the contract, as we have said, the ship building company agreed to have the vessel ready for machinery by September 15, 1902, and completed ready for trial by October 15, 1902. It did not have the vessel ready for machinery at the first date named, nor did it have the boat completed and ready for trial at the latter date. Notice was sent the appellant of these failures on October 17, 1902. The appellant contends that this notice was too late to comply with the con-

dition of the bond above quoted, because given more than thirty days after the breach of that condition of the contract wherein the builder agreed to have the vessel ready for machinery by September 15, 1902. But we have held, in similar cases, that it was not necessarily fatal to the right of the obligee to recover on the bond that notice of the failure of the principal to comply with the terms of the contract was not given at the time the bond prescribes. While it is true that the requirement of notice is for the surety's benefit, and it may insist on a strict compliance with the terms of the bond in that respect wherever failure to give such notice might result in a loss to it, yet when the notice serves its purpose as well when given after the prescribed time as it does before—that is, when it is equally effective in protecting the surety from loss—it is inequitable, and a manifest abuse of the purposes of this provision of the bond, to hold that the mere technical variance shall relieve the obligor entirely; the surety, being a compensated surety, can insist only on those forfeiture clauses of its contract the failure to comply with which probably inflicts upon it a loss. Now in this case, notice given within the time limited might possibly have relieved the surety from the payment of a part of the demurrage, charged for the non-completion of the vessel on time, and because the law cannot say how much of this demurrage, timely notice might have saved, the law, for fear of exacting too much, will not require payment of any part of it. But the most exacting search of the record fails to disclose why the failure to give notice of the first breach in any way changed the relation of the appellant with reference to the second, the failure of the contractor to go on and complete the vessel. It not only had notice of the abandonment of work thereon, but a specific demand was made upon it to complete the vessel, and the respond-

31-37 WASH.

ent took up the work only after the appellant had, by
its inattention and silence, made it apparent that it in-
tended to do nothing in the matter.  We think the appel-
lant should be held liable for the cost of the vessel paid by
the respondent in excess of the contract price.  This sum
we find to be $1,616.50.

The judgment of the trial court will be reversed and
the cause remanded with instructions to enter a judgment
against the defendant, the Ballard Dry Dock & Ship
Building Company, and the appellant, The United States
Fidelity and Guaranty Company, for the sum of
$1,616.50, together with interest thereon from the 1st day
of March, 1904, at the legal rate.  The appellant will re-
cover its costs on this appeal.

MOUNT, C. J., HADLEY, and DUNBAR, JJ., concur.

RUDKIN, ROOT, and CROW, JJ., took no part.