## LYMAN et al. v. TITLE GUARANTY & SURETY CO.

No. 2811.    Decided February 11, 1916.    Rehearing denied July 5, 1916.    (158 Pac. 423.)

1. PRINCIPAL AND SURETY—LIABILITIES TO THIRD PERSONS—ESTOP-
   PEL.  Where a surety bond recognized the existence and binding
   effect of the contract between the plaintiffs and the contractors
   insured, the surety company cannot be heard to deny those
   facts.[1]  (Page 236.)

2. APPEAL AND ERROR—REVIEW—QUESTIONS OF FACT.  In a law case,
   the Supreme Court will not make findings nor treat as found
   that which might have been, or which ought to have been,
   found.  (Page 237.)

3. PRINCIPAL AND SURETY—LIABILITIES TO THIRD PERSONS—NOTICE
   OF DEFAULT.  That a surety company had no notice that the con-
   tractor failed to prosecute the work at the rate agreed upon
   or to complete it at the agreed time, for which the plaintiff
   made no claim, does not affect its liability on the contractor's
   refusal to complete the work, of which it had immediate notice,
   in the absence of a showing that it was harmed as to the latter
   default by the want of notice of the prior default.  (Page 237.)

4. PRINCIPAL AND SURETY—LIABILITIES TO THIRD PERSONS—ACTIONS
   —CONTRACT LIMITATIONS.  Where a contractor agreed to com-
   plete the work on November 25th, plaintiffs' action on the surety
   bond of the contractor for refusal of the contractor on De-
   cember 9th to complete the work was within the bond limitation
   of six months, where the complaint was filed on May 25th, and
   the defendant served with summons on June 5th.  (Page 238.)

Appeal from District Court, Third District; *Hon. T. D. Lewis*, Judge.

Action by John C. Lyman and another against the Title Guaranty & Surety Company.

Judgment for plaintiffs.  Defendant appeals.

AFFIRMED.

---

[1] *Gottsegan Cigar Co.* v. *Levy*, 42 Utah 336, 130 Pac. 780.

*Gustin, Gillette & Brayton,* for appellant.

*G. A. Iverson* and *E. V. Higgins,* for respondents.

## APPELLANT'S POINTS.

In a case in which it provided in the bond given by the Surety Company "that the surety shall be notified in writing of any act on the part of the said principal or his employees which may involve a loss for which said surety is responsible hereunder within ten days after the appearance of such act." This is a condition precedent to a recovery and compliance therewith must be averred and proved. (*Knight-Jillson* v. *Castle,* (Ind.) 27 Lawyer's Rep. Ann. 573 N. S.; *Miller* v. *Stewart,* 9 Wheat 680; *Insurance Co. of N. America* v. *Brin,* 12 N. E. 315; *Rwy. Passenger R. R. Co.* v. *Burwell,* 44 Ind. 460; *Sullivan* v. *Fraternal Societies et al.,* 73 N. Y. Sup. 1094; *Swift & Co.* v. *Jones,* 135 Fed. 437; *Cali. Bank* v. *American Surety Co.,* 87 Fed. 118; *Cali. Savings Co.* v. *Am. Surety Co.,* 82 Fed. 866; *Orleans et al.* v. *International Traction Co.,* 37 S. 10; *Field* v. *Rawlins,* 6 Ill. 58; *Foster* v. *Fidelity Co.,* 40 L. R. A. 833; *Star* v. *Millikin,* 54 N. E. 328; *Elec. Appliance Co.* v. *U. A.,* 53 L. R. A. 609; *Whitsel* v. *Nebane,* 64 N. C. 345; *Clay* v. *Edgarton,* 19 Ohio State 549; *Fidelity Co.* v. *Sanders.* 70 N. E. 167; *Guaranty Co. of N. A.* v. *Mechanics Savings Bank,* 183 U. S. 402. 46 Lawyers, Edition 253; *Greenfield Lumber Co.* v. *Parker,* 159 Ind. 571.)

"The overwhelming weight of authority supports the proposition that the rule of *strictissimi juris* by which the rights of uncompensated sureties are determined, is not applicable to the contract of surety companies which make the matter of suretyship a business for profit." (Note to *Hormel* v. *Bonding Co.,* 112 Minn. 288, 33 L. R. A. (N. S.) 513.)

Says the court, in *Young* v. *American Bonding Co.,* 228 Pa. 373, 77 Atl. 623:

"The trend of all modern decisions, Federal and State, is to distinguish between individual and corporate suretyship where the latter is an undertaking for money consideration by a company chartered for the conduct of such business. * * * The courts generally hold that such a company can be re-

lieved from its obligation for suretyship only where a departure from the contract is shown to be a material variance.'' *Bryant* v. *American Bonding Co.,* 77 Ohio St. 90; *Bank of Tarboro* v. *Fidelity Co.,* 128 N. C. 366; *Kansas City* v. *Davidson,* (Mo. App.) 133 S. W. 365; *Supreme C. K. of A.* v. *Fidelity etc. Co.,* 63 Fed. 48; *Savings Bank* v. *Guarantee etc. Co.,* (C. C.) 68 Fed. 458; *Cowles* v. *U. S. Fidelity etc. Co.,* 32 Wash. 120, 72 Pac. 1032.)

In *Smith* v. *Molleson,* (N. Y.) 42 N. E. 669, it was contended substantially as in the case at bar that ''the surety has the right to insist on the strict performance of any condition for which he has stipulated, whether others would consider it material or not.'' The court said: ''When the terms of the contract guaranteed have been changed, or the contract, as finally made, is not the one upon which the surety agreed to be bound, he will be released.'' The surety then insisted that there had been such a departure from the terms of the contract as to change the defendant's position to her prejudice and to deprive her of rights and benefits under the contract. But the court said, in holding the surety liable:

''We are not dealing, now, with an actual change in the terms of the contract, *but with acts or omissions of the plaintiff in the performance, which, in order to operate to release the surety, must be of such a character that it can be said that her position was changed to her prejudice.*''

The doctrine of the Molleson case appears to be generally accepted as the law. (Story's Equity Jurisprudence, Sec. 325; *Benjamin* v. *Hillard,* 23 How. 149; *Stephen* v. *Elver,* (Wis.) 77 N. W. 737; *Crafton* v. *Hinkley,* (Wis.) 86 N. W. 859; *Lakeside Land Co.* v. *Surety Company,* 105 Minn. 213; *Gallagher* v. *St. Patrick's Church,* 45 Neb. 535; *Hohn* v. *Shideler,* — Ind. —, 72 N. E. 575; *Schreiber* v. *Worm,* 164 Ind. 7, 72 N. E. 852; *Hand Mfg. Co.* v. *Marks,* 36 Ore. 523, 59 Pac. 549; *Drumheller* v. *Am. Surety Co.,* — Wash. —, 71 Pac. 25; *Beebe* v. *Redward et al.,* — Wash. —, 77 Pac. 1052; *Henry* v. *Flynn et al.,* — Wash. —, 79 Pac. 42; *Am. Surety Co.* v. *Scott et al.,* 18 Okl. 264, 90 Pac. 7; *Hormel & Co.* v. *Am. Bonding Co.,* 112 Minn. 288.)

See also the following authorities cited by appellant: *Elec-*

*tric Appliance Co.* v. *U. S. F. & G. Co.*, 58 L. R. A. 609; *Kimball Co.* v. *Baker,* 62 Wis. 529; *Davis* v. *Wells,* 104 U. S. 159.

STRAUP, C. J.

This is an action to recover on a surety bond.

The plaintiffs and O'Toole Bros., on the 15th day of September, 1913, entered into a written contract by the terms of which O'Toole Bros. agreed to dig and back-fill all trenches to construct a waterworks system at Cokeville, Wyo., in accordance with certain specifications. The plaintiffs agreed to pay therefor eleven cents per linear foot. O'Toole Bros. agreed to do the work not later than the 25th of November, 1913, and to pay ten dollars a day for each day thereafter the work remained unfinished. Each causing delays agreed to pay the other's "force account." O'Toole Bros. agreed "to dig the trench at the rate of at least one thousand feet (1,000) per day after" the 25th day of September, and "to furnish" the plaintiff "a surety bond in the sum of fifteen hundred dollars ($1,500) satisfactory to" them, guaranteeing the performance of the contract on the part of O'Toole Bros.; the plaintiffs to furnish O'Toole Bros. a surety bond satisfactory to them, in the sum of $1,500, guaranteeing "the payment of the contract price for all trenches dug and back-filled by" O'Toole Bros.

The suit was on the surety bond given by the defendant, guaranteeing the faithful performance by O'Toole Bros. of their contract. In that bond it is recited:

"Whereas, said principal (O'Toole Bros.) has entered into a certain written contract bearing date the 15th day of September, 1913, with said Lyman & Samuels of Salt Lake City for the work in connection with digging and back-filling all trenches required to complete the waterworks system at Cokeville, Wyo., to furnish all of the labor, material, and other things contemplated by said contract, which contract, together with all its terms, covenants, conditions, and stipulations, is incorporated herein and made to form a part hereof as fully as if said contract was recited at length herein; subject nevertheless to the conditions of this bond:

"Now, therefore, the conditions of the foregoing obligation is such that, if the said principal shall well and truly indemnify and save harmless the said obligee from any pecuniary loss resulting from the breach of any of the terms, covenants, and conditions of the said contract on the part of the said principal to be performed, then this obligation shall be void; otherwise to remain in full force and effect in law: Provided, however, that this bond is issued subject to the following conditions and provisions:

"First. That no liability shall attach to the surety hereunder unless, in the event of any default on the part of the principal in the performance of any of the terms, covenants, or conditions of the said contract, the obligee shall promptly and immediately upon knowledge thereof, and in any event not later than 30 days after the occurrence of such default, deliver to the surety at its office in the City of Scranton, Pa., written notice thereof with a statement of the principal facts showing such default and the date thereof; nor unless the said obligee shall deliver written notice to the surety at its office aforesaid, before making to the principal the final payment provided for under the contract herein referred to.

"Second. That, in case of such default on the part of the principal, the surety shall have the right, if it so desires, to assume and complete or procure the completion of said contract and, in case of such default, the surety shall be subrogated and entitled to all the rights and properties of the principal arising out of the said contract and otherwise, including all securities and indemnities theretofore received by the obligee and all deferred payments, retained percentages, and credits due to the principal at the time of such default, or to become due thereafter by the terms and stipulations of the contract.

"Third. That in no event shall the surety be liable for a greater sum than the penalty of this bond, or subject to any suit, action, or other proceedings thereon that is instituted later than six months from the date stipulated in said contract for its completion.

"Fourth. That the said obligee shall retain the last payment and reserve due said principal until the complete per-

formance by said principal of all the terms, covenants, conditions, and stipulations of the contract on said principal's part to be performed and until the expiration of the time within which liens or notice of liens may be filed, by reason of anything done in or towards the performance of said contract, and until the cancellation and discharge of such liens if any.''

In the complaint it is alleged that, in pursuance of the contract entered into between the plaintiffs and O'Toole Bros., the latter entered upon the performance of the work and continued with the same until about two-thirds of the work had been completed when they, without cause, and against the consent of the plaintiffs, abandoned the work and refused to continue with it; and that the defendant, with notice thereof, refused to complete the work, whereupon the plaintiffs themselves completed it. The suit is to recover the reasonable cost for such completion.

The defendant, answering, admitted the execution of the contract and the bond, but alleged that the plaintiffs had failed to give the surety bond to O'Toole Bros. called for by their contract, by reason of which it is alleged that contract and the bond became inoperative; that the plaintiffs, without the knowledge or consent of the defendant, extended the time ten days to complete the work; that the defendant was not notified of any default on behalf of O'Toole Bros., until the 6th of January, 1914, and that, if any default occurred, it was more than thirty days prior to the giving of any notice to the defendant; that the plaintiffs, without notice to the defendant, and in violation of the terms of the bond "made final payment of said contract to" O'Toole Bros.; and that the plaintiffs did not, as provided by the bond, bring their action within six months of the default.

The case was tried to the court who found:

"That soon after the execution of said contract (between plaintiffs and O'Toole Bros.) said O'Toole Bros. entered upon the performance thereof and performed a portion of the work agreed to be done by them, and on the 9th day of December, 1913, without just cause or excuse, without the consent and against the will of the plaintiffs, the said O'Toole

Bros. quit work and failed, neglected and refused to do fur-
ther work under said contract.

"That on December 30, 1913, the plaintiffs gave written
notice to the defendant company of the fact that said O'Toole
Bros. had quit work under said contract and had refused to
proceed with the work according to the terms thereof, and
had abandoned said contract. That the plaintiffs in said
notice and as a part thereof requested the defendant com-
pany to proceed to complete the said trench-digging and back-
filling remaining unperformed by the said O'Toole Bros. and
then uncompleted by reason of the default of the said O'Toole
Bros.; but the said defendant company, after the receipt of
said notice, and on the 5th day of January, 1914, refused
and still refuses to complete said work.

"That after notice as aforesaid to the defendant company
of the default of the said O'Toole Bros., and after the said
refusal of the defendant company to proceed to complete
said work, the plaintiff proceeded to complete the said work
according to the plans and specifications made a part of
said contract," etc.

Judgment was thereupon entered for the plaintiffs in the
sum of $1,500. Defendant appeals.

The assignments are "that the court erred in granting
judgment against the defendant and in favor of the plain-
tiffs" for stated reasons that "the judgment is against law
and the facts." The chief contention in this respect is that,
on the facts as found, and as admitted by the plead-
ings, the defendant and not the plaintiffs ought to
have prevailed. The first point made is that by the
pleadings it is admitted that the plaintiffs did not give the
surety bond to O'Toole Bros. called for by their contract;
and for that reason it now is claimed that the contract
between the plaintiffs and O'Toole Bros. was inoperative,
and that no obligation on the part of the defendant on its
surety bond attached, or, if so, was extinguished. The plain-
tiffs by their reply, while admitting that the bond called for
by their contract was not given, yet averred "that no de-
mand was ever made on them, either by the said O'Toole
Bros. or the defendant to provide said bond, but that without

making such demand the said O'Toole Bros. entered upon the performance of the said written contract and the said defendant, well knowing that said bond had not been provided by plaintiffs, executed and delivered to the plaintiffs the surety bond hereinbefore mentioned and set out in said answer." No finding was made as to this issue. But the defendant, by its own recitals in its bond, acknowledged the insistence and binding effect of the contract between the plaintiffs and O'Toole Bros., and may not now be heard to deny what it then solemnly declared and admitted. *Gottsegan Cigar Co.* v. *Levy,* 42 Utah, 336, 130 Pac. 780, where Mr. Justice Frick for the court said:

"A guarantor is estopped to dispute the recitals of his own contract, so far as they are material and not violative of law or public policy; and hence a trust company, which guarantees payment for goods furnished under a contract of sale, is estopped to deny that such a contract was entered into."

A further point argued is that under the terms of the contract between the plaintiffs and O'Toole Bros., and which was made a part of the surety bond sued on, the work was to be completed not later than the 25th of November, 1913; but that the evidence shows that the plaintiffs, without the knowledge or consent of the defendant, granted O'Toole Bros. ten days' additional time. Nothing of that kind was found and no complaint is made that it was not found. We, in a law case, as this, may not make findings nor treat as found that which might have been, or ought to have been, found. We have said that many times.

So, too, is it argued that the evidence shows that O'Toole Bros. did not, as required by the contract, dig at least 1,000 feet of trench per day. But, again, there is no finding as to that and no complaint made because none was made. And in this connection it is further argued that the failures of O'Toole Bros. to dig at least 1,000 feet of trench per day and to complete the work not later than the 25th of November were defaults on their part, of which, and in accordance with the provisions of the bond, the defendant was entitled to notice within thirty days after such defaults occurred, but none was given; and hence the defendant ought

now to be released and discharged from all liability on its bond. Again, nothing of that kind was found and no complaint made that it was not found. But, as has been seen, the plaintiffs claimed no damage and in no particular sought to hold the defendant liable because of such defaults. Nor are there any averments, proof, or findings to show in what particular the defendant was harmed because of such defaults, or its status or rights affected as to the particular and only default and damage for which the plaintiffs sought and were permitted to recover, for the abandonment of the work by O'Toole Bros., their refusal, and the defendant's refusal, to complete it. Of that default the evidence shows, and the court found, the defendant had written notice within thirty days after it occurred. Hence, that the defendant had no notice within thirty days of other defaults for which the plaintiffs claimed nothing and sought not to hold the defendant was immaterial, without allegations and proof that such want of notice in some manner affected the defendant's rights or status in the premises, with respect to the particular default of which the defendant had notice and for which the plaintiffs sought to hold it liable. Nothing of that kind was either alleged, proven, or found.

There is no merit to the claim that the suit was not commenced within six months. The evidence shows, and the court found, that O'Toole Bros. abandoned and surrendered the work on the 9th of December, 1913, of which the defendant was given written notice on the 30th of December. The complaint was filed on the 25th of May, 1914, and the defendant served with summons on the 5th of June, 1914.

We think the judgment ought to be affirmed with costs. Such is the order.

FRICK, J., and LOOFBOUROW, District Judge, concur.