157 So.2d 835 (1963)
MAULE INDUSTRIES, INC., A FLORIDA CORPORATION, ET AL., APPELLANTS,
v.
GAINES CONSTRUCTION CO., INC., A FLORIDA CORPORATION, ET AL., APPELLEES.
No. 3804.
District Court of Appeal of Florida, Second District.
October 30, 1963.
Rehearing Denied December 4, 1963.
Stanley Arthur Beiley, of Salley & Paul, Richard M. Winokur, of Bolles & Prunty, Miami, and Crofton, Brewer & Holland, Titusville, for appellants.
Monroe E. McDonald, of Sanders, McEwan, Schwarz & Mims, Orlando, and Ralph Geilich, of Williams & Geilich, Melbourne, for appellees.
FUSSELL, CARROLL W., Associate Judge.
Maule Industries, Inc., a Florida corporation, and one of the appellants here, was plaintiff in the suit below and sought to impress and foreclose a lien on property *836 of the land owner; to determine existence and priority with other lienors who were made parties-defendant; to determine liability on the part of one of the appellees, United States Fidelity & Guaranty Company, who was defendant below under a payment bond executed by said defendant in connection with the construction work out of which the claims for lien arose; and to determine priority as to a mortgage held by the defendant, John D. McArthur, one of the appellees here.
Appellant Gunite Associates, Inc., is one of the defendant lienholders in the suit below, and joins with the appellant Maule Industries, Inc., in contending that the lower court was in error in determining that the United States Fidelity & Guaranty Company was not liable to the appellant lienors under the payment bond, and in determining priority of the mortgage of John D. McArthur to the lien claimants.
The court determined the validity of appellants' liens as against the land owner, and this is not questioned on this appeal.
It is admitted that appellant lien claimants had no knowledge of the existence of the payment bond at the time the materials were furnished, at the time their claim for lien was filed, or at the time the notice of claim of lien was given to the land owner.
It is also admitted that the land owner and contractor are each corporations and that Julius Gaines is the president and sole or chief stockholder in each corporation.
The payment bond introduced in evidence contains the following provision:
"(3) No suit or action shall be commenced hereunder by any claimant,
"(a) Unless claimant shall have given written notice to any two of the following:
The Principal, the Owner, or the Surety above named, within ninety (90) days after such claimant did or performed the last of the work or labor or furnished the last of the materials for which said claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the materials were furnished, or for whom the work or labor was done or performed. Such notice shall be served by mailing the same by registered mail, postage prepaid, in an envelope addressed to the Principal, Owner or Surety, at any place where an office is regularly maintained for the transaction of business, or served in any manner in which legal process may be served in the state * * *."
It is admitted that the appellant lienors were covered by this payment bond in the beginning, even though they had no knowledge of its existence.
It is the contention of the appellee, United States Fidelity & Guaranty Company, that it is relieved from liability on this bond as to appellants by reason of their failure to comply with the above provision, in that they have failed to prove the giving of written notice to two of the three following: Principal, Owner or Surety, by registered mail, postage prepaid, in an envelope addressed to the Principal, Owner or Surety, at any place where an office is regularly maintained for the transaction of business.
In so far as appellant, Maule Industries, Inc., is concerned, Julius Gaines, president of each the owner and the contractor corporations, admits that he received a letter, with claim of lien attached, by registered mail addressed to the owner corporation, and which indicated at the bottom thereof that a copy had also been sent to Gaines Construction Co., Inc.; and in so far as appellant, Gunite Associates, Inc., is concerned, the said Julius Gaines admits that he received a copy of a letter enclosing a copy of the claim of lien of this company, which was addressed to him and his wife individually, and that he had knowledge of this claim.
There is considerable argument before the court and in the briefs between *837 the appellants and the bonding company as to whether or not the provision for notice should be strictly construed. Such contracts have been strictly construed in so far as they apply to accommodation sureties. However, in the case of a compensated surety, and particularly where the surety is in the business of writing bonds for profit, the better rule seems to be that actual damage resulting from failure to give notice must be pleaded and proved as a defense, Board of County Commissioners v. United States Fidelity & Guaranty Co., 96 Kan. 255, 150 P. 590 (1915), and that failure to give a compensated surety notice of a principal's default required in the bond does not relieve the surety where the failure resulted in no loss to it. Illinois Surety Co. v. Huber, 57 Ind. App. 408, 107 N.E. 298 (1914). See also McNear v. Malow, 282 Mich. 239, 276 N.W. 433 (1937); Lyman v. Title Guaranty & Surety Co., 48 Utah 230, 158 P. 423 (1916).
It would appear that this court has adopted this view of the law as decided in Gruman v. Sam Breedon Construction Co., 148 So.2d 759 (Fla.App. 1963). In this case the amount of the contract had been increased by the owner and contractor, contrary to the provisions of the bond and after the bond had been written. The question involved in this case on appeal was as follows:
"On appeal the question is whether a compensated surety should be relieved of its obligation and dismissed from the cause where the contract, the performance of which it insures, may be varied by a separate letter, which to the surety is unknown, without proof of the extent to which it possibly could be harmed."
Judge Shannon in the summation of this case and speaking for the court said:
"It is noted, therefore, that the misrepresentation charged must go to a material part of the transaction and that, in order for the surety to be totally exonerated, the departure must result in injury to it. Gibbs v. Hartford Accident & Indemnity Co., supra.[1] In the instant case there is no allegation of resultant injury to the surety by reason of the addition to the contract of the aforementioned supplemental letter. The facts here differ from those in Lambert v. Heaton, supra,[2] and we conclude that the lower court in the instant case erred in dismissing the surety from the cause."
The case of Gruman v. Sam Breedon Construction Co., supra, also cites with approval the following from 30 Fla.Jur., Suretyship and Guaranty, Sec. 14:
"* * * Under the modern rule, a material breach by the obligee of the contract, which increases the risk of the surety, will release the latter from his obligation, as will a material alteration of the contract; but in the case of a compensated surety regard must be had to the extent to which the interests of the surety are in fact prejudiced by breach of any duty resting upon the person indemnified. While a surety should not be allowed to suffer by reason of such a breach, neither should he be permitted to profit thereby. Hence if the breach is one in respect of which the surety can be compensated for any damage he suffers, he should be so compensated but will not necessarily be discharged from his obligations. * * * The transaction to which the surety seeks to avail himself for his discharge must be such as to lessen the ability of the principal to comply with his contract, alter the rights of the parties, or enlarge the demand, to the prejudice of the surety."
*838 It would also appear to this court that service upon Julius Gaines of the claim of lien and his actual admitted knowledge of the same, would in fact substantially comply with the requirements of the payment bond since, as is admitted in this case, he was the president and sole stockholder of each the owner and contractor corporations. We think that the case of First Bond & Mortgage Co. v. Yancey (Fla. 1932), 104 Fla. 229, 139 So. 597, is authority for this view. In this case it was indicated that the president of the First National Bank in Orlando was also the Vice President of the First Bond & Mortgage Co.; that as president of the First National Bank of Orlando he had knowledge that a mortgage given to said bank by T.A. Yancey, Trustee, encumbering trust property, was invalid because the money loaned was not for the benefit of the cestui que trustant, but was for the purpose of procuring funds for his individual use and the use of his corporation; that thereafter when this mortgage was not paid this same individual as vice president of First Bond & Mortgage Co. took a mortgage encumbering this same property for the purpose of paying off the mortgage to the First National Bank in Orlando. The court held that his knowledge as president of the First National Bank of Orlando abided and continued with him as vice president of the First Bond & Mortgage Co., and dismissed the suit of this company seeking to foreclose the mortgage.
It would seem in the instant case that not only is a similar situation presented, but that the connection is much closer. Not only was the individual president of each corporation, he was also the sole stockholder in each corporation, and each corporation was engaged at the time as owner and as contractor, respectively, in the improvement of the same subdivision property.
The next question presented is as to the priority as between the appellant lienors and the mortgagor, John B. McArthur. This question involves an interpretation of the facts to determine whether or not there was visible commencement of operations at the time the mortgage was placed of record. The applicable Florida Statute, Section 84.01, F.S.A., defines visible commencement of operations as follows:
"`Visible commencement of operations' means the first actual work of improving upon the real property or the first delivery to the site of the improvement of materials which remain thereon until incorporated in the improvement, of such manifest and substantial character as to notify interested persons that the real property is being improved or is about to be improved."
"Improved", as defined in this section of the Florida Statutes is as follows:
"`Improve' means build, erect, place, make, alter, remove, repair or demolish any improvement upon, connected with, or beneath the surface of any land, or excavate any land, or furnish materials for any of such purposes, or perform any labor or services upon such improvement; or perform any labor or services or furnish any materials in laying in the adjoining street or alley, any pipes, wires, curbs or sidewalks, or in grading, seeding, sodding or planting for landscaping purposes, or in equipping any such improvement with fixtures or permanent apparatus."
In this same section "Improvement" is defined as follows:
"`Improvement' means any building, structure, erection, construction, demolition, excavation, landscaping, or any part thereof existing, built, erected, placed, made or done on land for its permanent benefit."
The evidence indicates that prior to the recording of the mortgage and at least *839 two weeks before the mortgage was recorded, there had been $140.00 of work done on the entire subdivision, which consisted at most in stripping the grass and scarifying the land. There is no claim that any materials had been delivered on the property prior to the time of the commencement of the mortgage. There is no evidence of construction or excavation of any kind. There is no evidence that any foundations had been built or of any grading or filling operations on the property, and the only thing which had been done was the clearing of grass from some of the lots and the scarifying of a portion of the land. No work indicating a permanent benefit to the property of any kind had been made, and it is our view that the chancellor could not be held in error in determining that removing the grass and scarifying a portion of the land would not constitute visible commencement of operations such as would make the mortgage secondary to the lien claimants. Certainly it cannot be seriously contended that stripping grass from land constituted a permanent benefit or improvement.
The decree of the chancellor is reversed in so far as it decrees that the lien plaintiff and lien claimant do have and recover nothing upon their claims against the United States Fidelity & Guaranty Co., and is affirmed in so far as it decrees that the mortgage of John B. McArthur is declared to be prior and superior to all mechanics' liens.
It appears that there are or may be other defenses interposed on behalf of the United States Fidelity & Guaranty Co., which have not been passed upon by the lower court, and that this cause, as to the issues between the lien claimants and the bonding company is remanded for further action or procedure thereon as may be proper in accordance with this opinion.
Reversed in part and affirmed in part.
KANNER, Acting C.J., and ALLEN, J., concur.
NOTES
[1] Gibbs v. Hartford Accident & Indemnity Co., 62 So.2d 599 (Fla. 1952).
[2] Lambert v. Heaton (Fla.App. 1961) 134 So.2d 536.