399 P.2d 141

**UTAH STATE BUILDING BOARD et al.,**
Plaintiffs,

v.

**WALSH PLUMBING COMPANY et al.,**
Defendants.
George R. ROMNEY et al., Defendants
and Appellants,

v.

**INDUSTRIAL INDEMNITY COMPANY,**
a corporation, Third-Party De-
fendants and Respondents.

No. 10143.

Supreme Court of Utah.

Feb. 19, 1965.

Clyde, Mecham & Pratt, Salt Lake City, for appellants.

Shirley P. Jones, Jr., Salt Lake City, for respondents.

CROCKETT, Justice:

Utah State Building Board commenced an action on November 2, 1962, on behalf

of laborers and materialmen against Romney Company, alleging nonpayment for work and material supplied for the construction of a Rehabilitation Center at the University of Utah. Defendant Romney filed a third-party complaint against Industrial Indemnity Company for the payment of the claims of the laborers and materialmen under the terms of an indemnity bond.

A pretrial conference was held February 24, 1964, following which an order was entered against Romney dismissing its claim against Industrial Indemnity with prejudice. On April 2, 1964, a judgment was entered against Romney incorporating the pretrial order of February 24, 1964, and entering the judgment *nunc pro tunc* as of February 24, 1964. Romney appeals.

In July, 1959, Romney Company, general contractor, entered into a contract with the Utah State Building Board to construct the Rehabilitation Center at the University of Utah. Romney subcontracted the plumbing work to Walsh Plumbing Company for $120,526 and required Walsh to obtain a bond in this amount guaranteeing that the latter would pay for the labor and materials going into the job. A bond for that purpose was furnished by Industrial Indemnity as surety, running to Walsh, named as principal, and to Romney, named as owner therein.

Romney paid Walsh Plumbing Company for this subcontract work in reliance on lien waivers which Walsh had wrongfully obtained from the laborers and materialmen by giving checks which were dishonored. Walsh defaulted and was unable to pay. The Utah State Building Board brought this action on behalf of laborers and materialmen to collect their money. Romney answered, has now paid the claims, and by its third-party complaint, seeks reimbursement from Industrial Indemnity on its surety bond.

Industrial Indemnity contends that Romney cannot maintain the action against it because it was not given notice of Walsh's default to which the terms of the bond entitle it. The pertinent provision states:

3. No suit or action shall be commenced hereunder by any *claimant*.

(a) Unless *claimant* shall have given written notice to any two of the following: The Principal, the Owner, or the Surety above named, within ninety (90) days. after such claimant did or performed the last of the work or labor, or furnished the last of the materials for which said claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the materials were furnished, or for whom the work or labor was done or performed.

In support of its position with respect to notice, Industrial Indemnity contends that the bond was given only for the benefit of laborers and materialmen; that Romney having paid those claims now sues on their behalf and stands in their shoes; and that the paragraph just quoted above requires that before the action is maintainable, they must have given the required notice of the default of Walsh. It is conceded that none of the laborers or materialmen gave such a notice. The critical question here is whether this failure precludes Romney from maintaining his action against Industrial Indemnity. In addressing this question these principles should be kept in mind: The terms of the bond should be construed strictly against Industrial Indemnity, as the paid surety who furnished it;[1] and it is not entitled to notice unless the bond expressly so provides.[2]

Industrial Indemnity's contention that the bond was given *only* to protect the laborers and materialmen is fallacious. It does not take into account the full nature and purpose of the bond. Conceded, that is one of its purposes. But looking at this transaction in full and proper perspective, as it should be,[3] will reveal clearly that it also had other purposes. The fundamental one was to carry out the overall objective of constructing and delivering a debt-free building. It was to accomplish this that Romney required Walsh to obtain the bond. The bond refers to the building contract between Walsh and Romney and states that it is "by reference made a part thereof." The contract provides "that the subcontractor (Walsh) shall submit to the contractor (Romney) a performance bond * * * [covering the entire contract price] * * * for the faithful performance of this agreement." In accordance with the contract, Romney paid the premium on the bond, which named Walsh as principal and Romney as owner therein.

Looking directly to the latter's rights in the matter, it is evident that in addition to protecting the laborers and materialmen, the bond had the separate and important function of assuring the owner Romney that Walsh would fulfill its obligation to Romney by paying for the labor and materials which went into the job.[4] Walsh

---

1. See Huber and Rowland v. City of South Salt Lake, 7 Utah 2d 273, 323 P.2d 258; as to bonds furnished by paid sureties, see Stearns, Law of Suretyship, Sec. 2.4, p. 12, (5th ed.) and cases there cited.
2. See Corp. of President of Church of Jesus Christ of L. D. S. v. Hartford Accident & Indemnity Co., 98 Utah 297, 95 P.2d 736.
3. De Luxe Glass Co. v. Martin, 116 Utah 144, 208 P.2d 1127; Victor Sewing Machine Co. v. Crockwell, 3 Utah 152, 1 P. 470, judgment affirmed Streeper v. Victor Sewing Machine Co., 112 U.S. 688, 5 S.Ct. 327, 28 L.Ed. 852; Blyth-Fargo Co. v. Free, 46 Utah 233, 234, 148 P. 427.
4. That surety bond of this type is of a dual nature, to protect the owner, and is also a separate obligation for the ben-

having defaulted in this obligation to Romney, the latter could bring suit in its own right against Walsh, or its surety, Industrial Indemnity, who accepted the premium and issued its bond to insure against the very condition that has come about: that Walsh may not pay the laborers and materialmen, and that Romney may have to do so.[5] The fact that Romney has paid the claimants and *could* be subrogated to their rights, does not necessarily mean that it must be considered as standing in their shoes, suing as a "claimant," and thus lose its right to sue in its *own* behalf.

■ Reverting to paragraph 3(a) of the bond quoted above, it will be noted that it requires only that the notice be given by a "claimant." Claimant is defined in the bond as "one having a direct contract with the principal (Walsh) or with a subcontractor of the principal for labor, material, or both * * *." It is thus obvious that "claimant" refers only to a laborer or materialman, and it is equally clear that it does not refer to the "owner" (Romney). In fact the owner is one of the parties to whom the claimant must give notice before bringing the action. Due to the fact that Romney sues in its own right and not as a "claimant," there is no requirement that it give the notice insisted upon by Industrial Indemnity.

■ While the foregoing is dispositive of the question of notice, these additional observations also have a further bearing on that point. The requirement is that a claimant must give the notice to any two of three parties, the owner (Romney), the principal (Walsh), and/or the surety (Industrial Indemnity). Even if it were required that the claimants had given notice as a condition precedent to Romney bringing this suit, it could have been given to the other two without notifying Industrial Indemnity, so there is no assurance that the latter was entitled to receive notice anyway. In this connection it should be kept in mind that where a contract such as this requires the giving of a notice, unless the failure to give it in some way puts a party to a disadvantage or adversely affects his rights, he should not be permitted to evade his just obligations under the contract because of a mere technical failure to give notice.[6] For the foregoing

---

fit of third persons who furnish labor and materials, see Stearns, Law of Suretyship, 5th ed., par. 8:13, p. 266 and authorities therein referred to.

5. De Luxe Glass Co. v. Martin, 116 Utah 144, 208 P.2d 1127; M. H. Walker Realty Co. v. American Surety Co., 60 Utah 435, 211 P. 998; Blyth-Fargo Co. v. Free, 46 Utah 233, 148 P. 427; see also C. O. Sparks, Inc. v. Pacific Coast Paving Co., 159 Cal.App.2d 512, 324 P.2d 293, at 296.

6. See Lyman v. Title Guaranty & Surety Co., 48 Utah 230, 158 P. 423; Heffernan v. United States Fidelity & Guaranty Co., 37 Wash. 477, 79 P. 1095; McClure v. Freeborn Eng.Const. Co., 97 Kan. 695, 156 P. 692; see also Williston, Contracts, § 1237 (Revised Ed. 1936).

reasons, there is no justification for dismissing the third-party complaint against the surety Industrial Indemnity on the ground that no notice was given.

Industrial Indemnity also urges that the appeal of Romney company was not taken within time. The judgment was entered on April 2, 1964, and the notice of appeal was filed April 30, 1964, which is within one month as provided by Rule 72, U.R.C.P. But the judgment recites that it is entered *nunc pro tunc* as of February 24, 1964, when a pretrial order was entered. This recital has no effect upon the time for appeal. We stated in Kettner v. Snow,[7] that "[a] court has power to act nunc pro tunc in proper circumstances, but such device cannot be used to revive time for taking a required step in a legal proceeding after the statutory time for doing it has elapsed." For the same reasons it cannot be used to reduce the time nor to defeat the right to take an appeal.

Finally, defendant argues that the pretrial order was itself a final judgment. We are not so persuaded. In order for a judgment to be final and start the time for appeal to run, there must be a judgment which is definite and unequivocal in finally disposing of the matter. In the case of Hartford Accident and Indemnity Company v. Clegg,[8] this court held that a *minute entry* signed by the judge, stating that "the court rendered its decision that judgment be entered against plaintiff and in favor of defendant" was not itself a "final judgment." While the February 24 pretrial order did recite that the action was dismissed with prejudice as to Industrial Indemnity Company, it did not purport to be a judgment, and no judgment was entered thereon until the one on April 2, 1964, referred to above. Under the circumstances here shown such a pretrial order does not meet the above stated requirement of a final judgment. It seems obvious that neither the parties nor the court so regarded it, otherwise there would have been no purpose in entering the final judgment which was entered on April 2, 1964, and from which the appeal was taken on time. (All emphasis is ours.)

The case is remanded for trial in conformity with this decision. Costs to appellants.

HENRIOD, C. J., and McDONOUGH, WADE and CALLISTER, JJ., concur.

7. 13 Utah 2d 382, 375 P.2d 28.

8. 103 Utah 414, 135 P.2d 919.