**VALLEY BANK AND TRUST COMPANY, a Utah Corporation, Plaintiff and Appellant,**

v.

**FIRST SECURITY BANK OF UTAH, N.A., Defendant and Respondent.**

No. 13852.

Supreme Court of Utah.
July 15, 1975.

---

Irving H. Biele, Biele, Haslam & Hatch, Salt Lake City, for plaintiff and appellant.

Don B. Allen and James W. Gilson, Ray, Quinney & Nebeker, Salt Lake City, for defendant and respondent.

ELLETT, Justice:

A check in the amount of $4,500 drawn on a Chicago bank was deposited by the payee in Valley Bank and Trust Company (hereinafter called Valley). The latter bank thus became the depositary bank within the meaning of Section 105(a) of Chapter 4 of the Uniform Commercial Code found in Replacement Volume 7B, U.C.A.1953.[1]

Valley then forwarded the check to First Security Bank of Utah, N.A. (hereinafter First Security), for collection. First Security thus became an intermediary bank within the meaning of Section 70A–4–105(c). First Security made a provisional credit on the account of Valley and for-

warded the check for collection to the Chicago bank, which thus became the payor bank within the meaning of Section 70A–4–105(b). First Security was notified by telegram on September 8, 1970, that the item was being returned for insufficient funds. The item was mailed by the Chicago bank to First Security but was lost in the mails and was never returned to First Security or Valley.

At the trial of this matter an employee of First Security testified that she gave notice to Valley of dishonor of the check by means of a phone call, although she did not remember to whom she gave the notice. Her testimony was based upon some notations she had made in a book under date of 9/9/70.

No employee of Valley had any knowledge of the transaction until six months later, when written notice was given by First Security to Valley, at which time the account of Valley was charged $4,500.

■ In a law case we accord the trial court the right to find the facts[2] even though we might disagree with him. It is to be noted that at the time of the transaction First Security was handling some 160,000 collection items monthly for Valley and that on September 8 it processed 169 items to be charged back to Valley. It was these items of which notice would have been given on September 9, 1970. The item involved in this case is the only one of which written notice was not given.

The trial court found that the notice of dishonor was given by phone and that oral notice thereof was sufficient as a matter of law, and, therefore, he ruled that the loss should fall on Valley. This appeal followed.

Chapter 3 of Title 70A deals with transactions between banks and their depositors. Section 508 therein provides that notice of dishonor may be given in any reasonable manner and that it may be oral or written. Section 70A–4–104(3) provides that Sec-

---

1. Hereafter reference will be made only to the code omitting the volume and title.

2. *DeVas v. Noble*, 13 Utah 2d 133, 369 P.2d 290 (1962).

tion 70A–3–508 applies to Chapter 4 (the chapter dealing with interbank transactions.)

Section 70A–4–212 provides that a collecting bank may revoke a settlement theretofore given in case of dishonor and charge back the amount to its customer "if by its midnight deadline or within a longer reasonable time after it learns the facts it returns the item or sends notification of the facts."

Notice the requirement to return the item or to *send* notification of the facts. It does not say *give* notice.

Section 202 of Chapter 4, Title 70A, also requires a collecting bank to use reasonable care in *sending* notice of dishonor.

Section 70A–1–201 applies to all chapters in Title 70A. Therein it is provided:

> (26) A person "notifies" or "gives" a notice or notification to another by taking such steps as may be reasonably required to inform the other in ordinary course whether or not such other actually comes to know of it. A person "receives" a notice or notification when

> (a) it comes to his attention; or

> (b) it is duly delivered at the place of business through which the contract was made or at any other place held out by him as the place for receipt of such communication.

> \* \* \* \* \* \*

> (38) "Send" in connection with any writing or notice means to deposit in the mail or deliver for transmission by any other usual means of communication with postage or cost of transmission provided for and properly addressed. . .

There is one further section of the Uniform Commercial Code which throws light on the problem before us. Section 70A–4–102(1) reads:

> To the extent that items within this chapter are also within the scope of chapters 3 and 8, they are subject to the provisions of those chapters. In the event of conflict the provisions of this chapter govern those of chapter 3 . . . .

■ It seems to us that Chapter 4 requires notice of dishonor to be given in writing and that it conflicts with the provisions of Chapter 3 which permits notice of dishonor to be given orally or in writing. Therefore, the provisions of Chapter 4 prevail over that provision in Chapter 3, and this is so although Chapter 4 makes that provision of Chapter 3 applicable to Chapter 4. It creates its own conflict; and since Chapter 4 requires written notice of dishonor, we hold that the trial court erred in his application of the law to the facts. The case is, therefore, reversed and remanded with directions to enter judgment for the plaintiff. Costs are awarded to the appellant.

TUCKETT and MAUGHAN, JJ., concur.

HENRIOD, C. J., concurs in the result.

CROCKETT, Justice (concurring in the result):

I concur in the result. But I think that if Valley Bank got actual notice the next day, as the trial court found, that it should be bound thereby and bear the loss. However, I do not think the proof of the defendant meets the substantial evidence test. In the many thousands of transactions handled by defendant bank, and the indication of 169 items charged back to one single bank (plaintiff) on that day, a mere notation that the phone call was made does not seem to me to be very substantial. Added to this are these countervailing facts: It was not indicated to whom the call was made; no one at Valley received such a call or had any record thereof; and moreover, written notice was in fact given to Valley, but several months late. I would therefore decide this case on the basis that there is no substantial evidence that notice was given to Valley. But I do not subscribe to the somewhat tortuous analysis of these seemingly inconsistent statutes, which purports to demonstrate that written

notice must be given, even though the bank receives actual notice. That generally the giving of actual notice, orally or otherwise, is sufficient, and that deviation in technicality as to form should be disregarded unless it adversely affects the other's rights, see Gallagher *v.* Willow School Tp., 173 Iowa 610, 154 N.W. 437; Heffernan *v.* United States Fid. & Guaranty Co., 37 Wash. 477, 79 P. 1095; Utah State Bldg. Bd. *v.* Walsh Plumbing Co., 16 Utah 2d 249, 399 P.2d 141, and authorities cited therein.