2003 UT App 405

Shirley FOSTER; and the Myotherapy College of Utah, a Utah corporation, Plaintiffs and Appellants,

v.

Paul MONTGOMERY, an individual; PMA Management Services, LLC, a Utah limited liability company; Paul Montgomery, as general partner for Celestial Enterprises, Ltd., a Utah limited partnership; Capital Growth Corporation, a Utah corporation; Paul Montgomery & Associates, Inc., a Utah corporation; Garry Gee; Dennis James; and John Does I through X, Defendants and Appellees.

No. 20020817–CA.

Court of Appeals of Utah.

Nov. 28, 2003.

---

Ross I. Romero and Vincent C. Rampton, Jones Waldo Holbrook & McDonough, Salt Lake City, for Appellants.

Mark Dykes, LeBoeuf Lamb Green & MacRae, Salt Lake City, for Appellees.

Before Judges DAVIS, GREENWOOD, and THORNE, Jr.

OPINION

GREENWOOD, Judge:

¶ 1 Plaintiffs Shirley Foster and the Myotherapy College of Utah (collectively, Foster) appeal from two trial court orders enforcing a Settlement Agreement (the Settlement Agreement or the Agreement) between Foster and defendants Paul Montgomery, et al. (collectively, Montgomery). The trial court's first Order granted Montgomery's cross-motion to enforce the Agreement. A second Order to Enforce was entered eighteen months later, at the request of Mont-

gomery, due to Foster's failure to comply with the terms of the Agreement. On appeal, Foster claims that the Agreement is not enforceable because there was no meeting of the minds and there was a failure of conditions precedent. In response, Montgomery argues that this court does not have jurisdiction to consider Foster's claims regarding the first Order because the appeal was not timely filed. Montgomery also claims there was a valid waiver of the conditions precedent at issue, and thus the Agreement was enforceable. We affirm.

## BACKGROUND

¶ 2 Shirley Foster owned the Myotherapy College of Utah and the Graystone office building. Because the Myotherapy College and the Graystone building were experiencing financial difficulties, Foster and Montgomery attempted to save the businesses though a series of management agreements beginning in late 1997. However, in August 1999, Foster brought suit against Montgomery, alleging that the agreements were fraudulently induced and that Montgomery's actions violated the terms of the agreements. Montgomery counter-claimed.

¶ 3 The parties agreed to mediation, and met on June 29, 2000, to discuss their respective claims. The mediation resulted in a one-page, handwritten settlement document titled "Outline of Agreement." The document was signed by all necessary parties. At the request of Foster's counsel, Montgomery's counsel drafted the formal agreement (the Settlement Agreement or the Agreement), based on the outline signed at the mediation.

¶ 4 The terms of Montgomery's counsel's draft of the Settlement Agreement relevant to this appeal are as follows. Foster was to transfer the Myotherapy College of Utah, a massage school, to Montgomery. Foster was also required to transfer title of the Graystone office building, which housed the col-

lege, free and clear of a Zions First National Bank lien on the building. Montgomery was required to pay and hold Foster harmless from a Small Business Administration loan secured by Foster's home. The Agreement also enumerated several conditions precedent, the failure of which would render the agreement void.

¶ 5 After the draft of the Settlement Agreement was distributed, the parties corresponded about disagreement over particular terms of the Settlement Agreement. Specifically, Foster disputed terms concerning the division of assets and liabilities, and wording of the covenant not to compete. In December 2000, approximately six months after the mediation, Foster filed a motion to enforce her understanding of the agreement terms. Montgomery filed a cross-motion to enforce the draft Settlement Agreement as drafted by Montgomery's counsel.

¶ 6 The trial court reviewed the pleadings and granted Montgomery's motion, stating in a minute entry that Montgomery's interpretation of the settlement document was "more compelling." In the order, the trial court stated that the parties were to execute Montgomery's draft of the Settlement Agreement within ten days of the order's entry. Further, should any of the parties refuse to execute the Settlement Agreement, Paul Montgomery was granted the power to execute the Agreement on Foster's behalf, under Utah Rule of Civil Procedure 70.[1] The Order to Enforce the Agreement was entered April 24, 2001 (the April 2001 Order).

¶ 7 After the April 2001 Order was entered, the parties continued to correspond about the Settlement Agreement. Because Foster refused to sign the Settlement Agreement, Montgomery signed for her, as permitted by the April 2001 Order. However, the Settlement Agreement never closed, because of the parties' continued disputes. Therefore, on August 9, 2002, Montgomery filed a Second Motion to Enforce the Settlement

---

1. Utah Rule of Civil Procedure 70 provides in relevant part:
   If a judgment directs a party to execute a conveyance of land or to deliver deeds or other documents or to perform any other specific act and the party fails to comply within the time specified, the court may direct the act to be done at the cost of the disobedient party by some other person appointed by the court and the act when so done has like effect as if done by the party.

Agreement. In Foster's Motion in Opposition, she argued that a failure of conditions precedent rendered the Agreement void by its own terms. Specifically, Foster argued that Montgomery failed to obtain accreditation for the Myotherapy College, in violation of the Agreement. She also argued that all necessary third party consents to the transfers and transactions of the Agreement were not obtained. This argument was based on the refusal of Zions First National Bank to release a lien on the Graystone building, which the Agreement required. Finally, Foster argued that because Montgomery refused to pay off the Small Business Administration loan secured by her home, she could not offer substitute collateral or pay off the Zions Bank lien on Graystone, and therefore Zions would not consent to remove the lien on Graystone.

¶ 8 After filing her Motion in Opposition to the Second Motion to Enforce, Foster requested an evidentiary hearing. This request was denied on grounds that it was untimely. At the same time the hearing was denied, the trial court entered an Order to Enforce the Agreement, on October 3, 2002 (the October 2002 Order). The October 2002 Order varies only slightly from the April 2001 Order.[2] Indeed, Foster's reply brief acknowledges that the terms of the second order "nearly mirror those of the first order." In the April 2001 Order, the court noted the parties' different interpretations of the mediation outline and granted Montgomery's cross-motion. In the October 2002 Order, the court merely granted Montgomery's motion.

¶ 9 Foster now appeals from the October 2002 Order, claiming that the Agreement should not be enforced because there was no meeting of the minds and because a failure of conditions precedent renders the Agreement void.

## ISSUES AND STANDARDS OF REVIEW

¶ 10 Montgomery argues that this court does not have jurisdiction to consider Foster's appeal regarding a meeting of the minds because the time for appeal began to run from the April 2001 Order, the trial court's first Order to Enforce. "If an appeal is not timely filed, this court lacks jurisdiction to hear the appeal." *Serrato v. Utah Transit Auth.,* 2000 UT App 299, ¶ 7, 13 P.3d 616.

¶ 11 Because we conclude that the time for appeal began to run from the April 2001 Order, we retain jurisdiction only to consider whether there was a failure of conditions precedent, because that issue was decided by the October 2002 Order. " 'Questions of contract interpretation not requiring resort to extrinsic evidence are matters of law, and on such questions we accord the trial court's interpretation no presumption of correctness.' " *Sackler v. Savin,* 897 P.2d 1217, 1220 (Utah 1995) (quoting *Zions First Nat'l Bank v. National Am. Title Ins. Co.,* 749 P.2d 651, 653 (Utah 1988)).

¶ 12 Both parties request attorney fees pursuant to the contract. " 'In Utah, attorney fees are awarded only if authorized by statute or contract. If provided for by contract, attorney fees are awarded in accordance with the terms of that contract.' " *Chase v. Scott,* 2001 UT App 404, ¶ 12, 38 P.3d 1001 (quoting *Equitable Life & Cas. Ins. Co. v. Ross,* 849 P.2d 1187, 1194 (Utah Ct.App.1993)).

## ANALYSIS

### I. Jurisdiction

¶ 13 Jurisdiction is a threshold issue and we therefore address it first. Montgomery argues that Foster's appeal is untimely because she failed to file the appeal within thirty days of the entry of the April 2001 Order. Foster maintains that her timely appeal from the October 2002 Order vests this court with jurisdiction to consider both the April 2001 Order and the October 2002 Order. She further asserts that the October 2002 Order is the "final" order for purposes of appeal.

¶ 14 "An appeal may be taken from a district ... court to the appellate court with

---

**2.** Whereas the April 2001 Order granted the parties ten days in which to execute the Settlement Agreement, the October 2002 Order only granted the parties five days.

jurisdiction over the appeal from all *final orders* and judgments. . . ." Utah R.App. P. 3(a) (emphasis added). A party must file the notice of appeal "within 30 days after the date of entry of the judgment or order appealed from." Utah R.App. P. 4(a). "If an appeal is not timely filed, this court lacks jurisdiction to hear the appeal." *Serrato v. Utah Transit Auth.*, 2000 UT App 299,¶ 7, 13 P.3d 616. Once this court concludes that it lacks jurisdiction, it "retains only the jurisdiction to dismiss the action." *Varian–Eimac, Inc. v. Lamoreaux*, 767 P.2d 569, 570 (Utah Ct.App.1989) (citation omitted).

¶ 15 We conclude that the April 2001 Order was a final order and that the time for appeal expired thirty days after the order was entered. "The Utah Supreme Court has recognized that an order is final where 'the effect of the order . . . was to determine substantial rights . . . and to terminate finally the litigation'. . . ." *Harris v. IES Assocs., Inc.*, 2003 UT App 112,¶ 56, 69 P.3d 297 (alterations in original) (citations omitted).

¶ 16 In this case, the April 2001 Order enforcing the Settlement Agreement was a final order because it determined the parties' substantial rights and terminated the litigation. The April 2001 Order terminated the litigation because no claims were left pending. *See Utah State Bldg. Bd. v. Walsh Plumbing Co.*, 16 Utah 2d 249, 399 P.2d 141, 144 (1965) ("In order for a judgment to be final and start the time for appeal to run, there must be a judgment which is definite and unequivocal in finally disposing of the matter."). The Settlement Agreement the trial court ordered enforced states that the parties "will execute a stipulated dismissal and a proposed order that dismisses the Litigation with prejudice against all parties, including Doe parties." Additionally, the April 2001 Order granted Montgomery the power to execute the Agreement on Foster's behalf, under Utah Rule of Civil Procedure 70. Because all claims were decided, the April 2001 Order was a final judgment, and the time for appeal began to run.

¶ 17 Foster maintains, however, that Montgomery invoked the lower court's jurisdiction anew when he filed the second Motion to Enforce the Settlement Agreement and thus vitiated any finality of the April 2001 Order. However, trial courts may extend the time for appeal only in limited circumstances. *See* Utah R.App. P. 4(b) (explaining time for appeal runs after order entered ruling on post-judgment motions); *id.* 4(e) (explaining trial court may extend the time to appeal only "upon a showing of excusable neglect or good cause"). Further, post-judgment motions that extend the appeal time must, themselves, be timely filed. *See* Utah R. Civ. P. 59(c); Utah R.App. P. 4(b); *Burgers v. Maiben*, 652 P.2d 1320, 1321 (Utah 1982).

¶ 18 The trial court in this case essentially reentered the same order it had previously entered to effectuate compliance with the first Order. "Where a judgment is reentered, and the subsequent judgment does not alter the substantive rights affected by the first judgment, the time for appeal runs from the first judgment." *Farkas v. Rumore*, 101 F.3d 20, 22 (2d Cir.1996) (per curiam) (citing *FTC v. Minneapolis–Honeywell Regulator Co.*, 344 U.S. 206, 211–12, 73 S.Ct. 245, 248–49, 97 L.Ed. 245 (1952)).

¶ 19 Although this doctrine has generally been applied in cases where a judgment has been reentered to correct a technical error, *see id.*, it nevertheless can be applied in this case. The substantive rights of the parties were not altered by the October 2002 Order. Indeed, the April 2001 Order disposed of all the parties' claims and gave Montgomery the power to execute the Settlement Agreement on Foster's behalf under Utah Rule of Civil Procedure 70, if she failed to do so. Accordingly, the April 2001 Order was a final order. Therefore, Foster's appeal is not timely as to the April 2001 Order and this court has jurisdiction to consider only issues decided by the October 2002 Order.

## II. Failure of Conditions Precedent

¶ 20 Because we conclude that the time for appeal began to run from the April 2001 Order, we retain jurisdiction to consider only whether there was a failure of conditions precedent, as that issue was decided by

the October 2002 Order.[3] Foster maintains that two stated conditions precedent have failed: accreditation of the Myotherapy College and consent from all necessary third parties. Based on these failures, she argues that the Settlement Agreement is void by its own terms. We review questions of contract interpretation as questions of law. *See Sackler v. Savin*, 897 P.2d 1217, 1220 (Utah 1995) (" 'Questions of contract interpretation not requiring resort to extrinsic evidence are matters of law, and on such questions we accord the trial court's interpretation no presumption of correctness.' " (quoting *Zions First Nat'l Bank v. National Am. Title Ins. Co.*, 749 P.2d 651, 653 (Utah 1988))).

¶ 21 The Agreement enumerates four conditions precedent, and states that if the conditions precedent are not "satisfied or waived in writing within ninety (90) days from the Agreement Date, [the] Agreement shall be null and void and shall have no further effect." [4] Foster claims that the agreement is void, based on a failure of two of the conditions precedent. The first condition precedent that Foster argues has failed is the Agreement's requirement of "[a] determination, *satisfactory to Montgomery*, that the transfer to Montgomery of Myotherapy as set forth in this Agreement will not result in ... the loss of Myotherapy's accreditation...." (Emphasis added.) However, there was no failure of this condition precedent, as the transfer of accreditation was required to be to Montgomery's satisfaction. By seeking specific performance of the contract, as discussed below, Montgomery manifested his satisfaction.

¶ 22 The second condition precedent which Foster claims has failed requires that "[a]ll necessary third party consents to the transfers and transactions contemplated by this Agreement" are obtained. Under the terms of the Agreement, Foster was to "execute and deliver documents transferring to ... Montgomery or such other entity as may be directed by Montgomery ... title to the Graystone Office Building free and clear of the lien of Zions First Nation Bank." Foster maintains that because Zions First National Bank refused to consent to release the lien on the Graystone building, this condition precedent failed. In her brief, Foster argues that because Montgomery refused to remove a Small Business Administration lien from her residence,[5] she could not offer substitute collateral or afford to pay off the underlying lien on Graystone, and therefore could not obtain Zions's consent to remove the lien on Graystone. Even if this strained interpretation of the condition were correct, Montgomery waived satisfaction of the condition by requesting specific performance of the contract.

¶ 23 Both of the conditions precedent at issue were for Montgomery's benefit. "Con-

---

3. The trial court implicitly decided that the Agreement was not void because of a failure of conditions precedent. Foster's Motion in Opposition to Montgomery's Second Motion to Enforce alleged the failure of the conditions, and, two weeks after her motion was filed, she requested an evidentiary hearing. The trial court denied her request for a hearing, stating in a minute entry ruling that the request was untimely under rule 4–501(3)(F) of the Rules of Judicial Administration. *See id.* ("If no written request for a hearing is made at the time the parties file their principal memoranda, a hearing on the motion shall be deemed waived."). Although the request was actually timely, this court has noted, "Settlement agreements may be summarily enforced without an evidentiary hearing." *Goodmansen v. Liberty Vending Sys.*, 866 P.2d 581, 584 n. 2 (Utah Ct.App.1993) (citations omitted); *see also John Deere Co. v. A & H Equip., Inc.*, 876 P.2d 880, 883 (Utah Ct.App.1994) ("[A] trial court's summary enforcement of a settlement agreement will not be reversed on appeal unless it is shown that there was an abuse of discretion." (quotations and citations omitted)).

At the same time it denied Foster's request for a hearing, the trial court entered the Order granting Montgomery's Second Motion to Enforce.

4. However, approximately three months after this ninety day period ended, both parties filed motions to enforce their understandings of their settlement agreement. By filing these motions, the parties acknowledged that the ninety day deadline was of no further effect.

5. Contrary to Foster's argument, the Settlement Agreement did not require Montgomery to remove the Small Business Administration lien on Foster's residence. Instead, the parties had a "hold harmless" agreement, under which Montgomery agreed to "pay or satisfy ... and hold Foster and Spinal Touch harmless from the debts of Foster owed ... [on] the United States Small Business Administration" loan.

ditions precedent may be waived by the party in whose favor they are made." 17A Am.Jur.2d *Contracts* § 658 (2003) (footnote omitted). Accreditation of the Myotherapy College benefits Montgomery, and must be to his satisfaction, because he retains the College under the Agreement. The "consent" of Zions First National Bank to remove the lien from the Graystone building, per Foster's argument, was also for Montgomery's benefit. Montgomery waived both of these conditions precedent in writing when he filed the Second Motion to Enforce the Settlement Agreement.

¶ 24 Montgomery filed the Second Motion to Enforce because Foster failed to comply with the terms of the Agreement, leaving Montgomery with two options: he could either seek rescission of the Agreement or he could request specific performance of the Agreement and reserve his right to seek damages suffered as a result of Foster's breach. The Utah Supreme Court has stated that settlement agreements constitute "an executory accord which allows the party alleging breach thereof the option of seeking enforcement of the settlement agreement or of rescinding that settlement agreement and pursuing the underlying claim." *Tebbs, Smith & Assocs. v. Brooks,* 735 P.2d 1305, 1307 (Utah 1986); *see also Coalville City v. Lundgren,* 930 P.2d 1206, 1210 (Utah Ct.App. 1997) (stating where one party fails to comply with terms of contract, the other party to the contract " 'has a right of rescission and an action for restitution [if there has been a material breach] as an alternative to an action for damages' " (quoting *Polyglycoat Corp. v. Holcomb,* 591 P.2d 449, 451 (Utah 1979))). Montgomery chose to request specific performance through the Second Motion to Enforce the Settlement Agreement. In that motion, Montgomery stated that if Foster continued in her refusal to comply with the court's order, he would·nevertheless proceed with the transfer of the Graystone building, with the Zions lien attached. Montgomery's motion also reserved his right to bring an action for damages resulting from Foster's breach.

¶ 25 Accordingly, we conclude that because Montgomery waived the conditions precedent which were for his benefit, Foster's argument that the Agreement is void fails.

### III. Attorney Fees

¶ 26 Both parties request attorney fees and costs on appeal. Under the Settlement Agreement, if litigation is "necessary to enforce the terms of this Agreement, the prevailing Party in any such litigation ... shall be entitled to recover from the non-prevailing Party the prevailing Party's attorney[ ] fees and costs." Additionally, Montgomery requests attorney fees for bringing the Second Motion to Enforce, which he also requested in that motion. In the October 2002 Order, the trial court entered the order "without prejudice to any later motion by the Montgomery Defendants for fees and costs incurred in connection with filing their second motion to enforce the settlement agreement." However, one week after the October 2002 Order was entered, and before Montgomery compiled his request for attorney fees and costs, Foster filed a Notice of Appeal.

¶ 27 Montgomery is entitled to attorney fees and costs under the contract. " 'In Utah, attorney fees are awarded only if authorized by statute or contract. If provided for by contract, attorney fees are awarded in accordance with the terms of that contract.' " *Chase v. Scott,* 2001 UT App 404,¶ 12, 38 P.3d 1001 (quoting *Equitable Life & Cas. Ins. Co. v. Ross,* 849 P.2d 1187, 1194 (Utah Ct.App.1993)). Because Montgomery prevailed below, and now prevails on appeal, he is entitled to attorney fees and costs pursuant to the Agreement. Therefore, we remand to the trial court for a determination of attorney fees and costs reasonably incurred by Montgomery in bringing the Second Motion to Enforce and on appeal.

### CONCLUSION

¶ 28 The time for appeal began to run from the first Order to Enforce the Settlement Agreement, the April 2001 Order, which was a final, appealable order. Therefore, because Foster's appeal was not timely filed from that Order, this court does not have jurisdiction to consider issues decided therein. However, the question of whether there was

a failure of conditions precedent was decided by the October 2002 Order, which was timely appealed. We conclude that Montgomery waived the conditions precedent, in writing, when he requested specific performance through his Second Motion to Enforce. Therefore, the contract is not void.

¶ 29 Finally, Montgomery is entitled to attorney fees and costs pursuant to the Agreement. We remand to the trial court for a determination of attorney fees and costs reasonably incurred in bringing the Second Motion to Enforce and this appeal.

¶ 30 WE CONCUR: JAMES Z. DAVIS and WILLIAM A. THORNE JR., Judges.