2011 UT App 250

**Randy L. ROBINSON, Petitioner and Appellee,**

v.

**Alexander Earl BAGGETT, Respondent and Appellant.**

No. 20100197–CA.

Court of Appeals of Utah.

Aug. 4, 2011.

Mitchell S. Maio, Michael K. Mohrman, and Tracy C. Schofield, Salt Lake City, for Appellant.

Frederick N. Green, Sandy, for Appellee.

Before Judges DAVIS, McHUGH, and VOROS.

## OPINION

McHUGH, Associate Presiding Judge:

¶ 1 Alexander Earl Baggett (Husband) appeals the trial court's denial of his motion under rule 60(b) of the Utah Rules of Civil Procedure following the entry of an Amended Supplemental Decree of Divorce and the related findings of fact and conclusions of law (Amended Decree) in his divorce from Randy L. Robinson (Wife).[1] We reverse and remand.

## BACKGROUND

¶ 2 Husband and Wife were married in Utah on December 31, 1995. The couple has one child together, who is still a minor. Wife filed for divorce on March 26, 2003. The parties stipulated, and the trial court ordered, that Husband would pay temporary support to Wife beginning on June 1, 2003, including child support, mortgage payments on the marital home, and temporary alimony of $2,909 per month (the Temporary Order). A trial was held before Judge Stephen L. Roth in June 2005, at which time the proceedings were bifurcated. Judge Roth granted the divorce on June 29, 2005, but provided that "[a]ll other matters associated with this divorce, including child support, alimony, property distribution, allocation of debts, attorney[ ] fees and any other matter argued before this court at trial . . . shall be reserved for final ruling by this court." The parties' marriage lasted for a total of 114 months.

¶ 3 On January 4, 2006, Judge Roth issued a Memorandum Decision explaining his decisions regarding custody of the parties' child, child support, division of property and debt, and alimony. Judge Roth awarded Wife alimony in the net amount of $1,882 per month, stating, "That Sum is payable for a period equal to the length of the marriage," i.e., 114 months. He instructed the parties to calculate the amount of alimony Husband would need to pay so that, after taxes, Wife would receive $1,882 and to include that gross amount in their proposed findings. In addition, because Husband had only paid approxi-

---

1. The Decree was called an "amended" decree simply because the proceedings were bifurcated and the trial court had previously entered a divorce decree.

mately two-thirds of the amount due under the Temporary Order, Judge Roth concluded that it was "reasonable and equitable that only one year of the pre-trial period be counted as having fulfilled [Husband's] alimony obligation."[2] Judge Roth ordered Wife's attorney "to prepare findings of fact and conclusions of law and an order that put into effect this Decision," and indicated that it "should include additional findings and conclusions from the evidence presented reasonably necessary to support the court's ruling or to include other necessary and customary provisions."

¶ 4 For the next eight months, the parties attempted unsuccessfully to agree upon the terms of the proposed order and the supporting findings of fact and conclusions of law. The parties submitted their respective positions on a number of disputed issues to the court on September 1, 2006, and argued the issues at a hearing before Judge Roth on July 11, 2007 (2007 Hearing). At the 2007 Hearing, the parties first discussed the date on which the parties' retirement accounts would be divided. Wife's attorney urged Judge Roth to take into account Husband's failure to meet his support obligations under the Temporary Order in determining the effective date for the division of marital property. Judge Roth considered Wife's concerns and stated generally that "my decision will take effect as of the date the supplemental decree was signed,"[3] except that the retirement accounts would be divided as of the date of his January 4, 2006 Memorandum Decision.

¶ 5 Later in the proceedings, the parties specifically addressed the issue of alimony. The parties stipulated at the 2007 Hearing that alimony would last for 102 months, which is the length of the 114–month marriage less the year credit Husband received for making partial payments under the Temporary Order. The parties then addressed the effective date of the permanent alimony award. Specifically, Wife questioned whether there should be an order addressing the temporary alimony arrearages accumulated during the interim between the June 2005 trial and the 2007 Hearing and if so, whether they should be calculated based on the higher award in the Temporary Order or based upon the permanent support award in Judge Roth's January 4, 2006 Memorandum Decision. Wife argued that Husband should not get the benefit of the lower alimony payments awarded under the Memorandum Decision because he had not been paying his share of marital debt as ordered by that decision. Therefore, Wife suggested that the lower permanent alimony amount not begin until Husband began paying toward the marital debt. Although Judge Roth acknowledged Wife's concern, he rejected Wife's suggestions regarding the commencement of the remaining 102 months of alimony. Instead, referring to his January 4, 2006 Memorandum Decision, Judge Roth stated, "It seems to me that my ruling—that my order ought to take place as of the date of the ruling, that the—it will be the gross amount of that [$]1,882 as of January." He further clarified,

And that would take—that would satisfy, it seems to me, my concerns about what's happened here, while still making implementation of my ruling, which was thought out in some length in terms of what was appropriate in terms of child support and—and alimony and put that into place. The concern I have is just continuing the temporary order because it also continues amounts of child support—and alimony, which I calculated on a much more detailed basis than is under the temporary orders. . . .

Judge Roth's reference to the precise dollar figure of the net alimony award, $1,882, as well as the reference to his January ruling, leave little doubt that he ordered permanent alimony to run for 102 additional months,

---

2. However, Judge Roth also ordered that if Husband paid "the full amount of arrears within forty-five (45) days after the date of this Decision, the period of alimony payment [would] begin June 2003," essentially allowing for two years credit on Husband's permanent alimony obligation if the condition was satisfied. It is undisputed that Husband failed to pay the arrearages within forty-five days after the Memorandum Decision.

3. As further explained below, the supplemental decree Judge Roth referred to was memorialized as the Amended Decree that Judge Robert P. Faust entered on April 11, 2008. See infra ¶ 6.

beginning on January 4, 2006—the date of his Memorandum Decision. Judge Roth again instructed the parties to prepare an order reflecting his rulings.

¶ 6 After several more months of negotiations in an attempt to memorialize Judge Roth's rulings and to resolve other issues left open at the 2007 Hearing, Wife served Husband with a copy of the proposed Amended Decree on March 5, 2008. Husband notified Wife of his intention to object but failed to do so within the time provided by the parties' correspondence. Because she had not received any formal objections to the Amended Decree, Wife submitted it to the court on April 3, 2008. By this time, Judge Robert P. Faust was assigned to serve as the trial judge on the case as the successor to Judge Roth. Seeing that no objections had been filed within the five days provided by rule 7(f)(2) of the Utah Rules of Civil Procedure, Judge Faust entered the Amended Decree on April 11, 2008. One of the provisions of the Amended Decree provided that Husband was to pay $2,499 [4] per month as alimony to Wife for a period of 102 months to begin on the date that the Amended Decree was entered, April 11, 2008. Because Judge Roth's ruling at the 2007 Hearing ordered the 102 months of permanent alimony to begin as of the date of the January 4, 2006 Memorandum Decision, the Amended Decree provided Wife with twenty-eight extra months of permanent alimony.

¶ 7 On April 28, 2008, Husband filed a motion for rule 59(e) or rule 60(b) relief (First Rule 60(b) Motion). As an addendum to the First Rule 60(b) Motion, Husband's attorney submitted an affidavit stating that on April 4, 2008, his office received a copy of the Amended Decree and notice that it had been submitted to the court but that he had not seen it until April 28, 2008. Husband's attorney indicated that he is not certain why he did not see the letter, but also noted that he was moving offices during that time. Husband argued that he was entitled to relief under rule 59(e) of the Utah Rules of Civil Procedure based on irregularity in the pro-

ceedings, *see* Utah R. Civ. P. 59(a)-(a)(1) (providing that a court may grant a new trial, amend or make new findings of fact and conclusions of law, or direct the entry of a new judgment based on "[i]rregularity in the proceedings of the court, jury or adverse party, or any order of the court, or abuse of discretion by which either party was prevented from having a fair trial"), or because of accident or surprise, *see id.* R. 59(a)(3) (granting relief under rule 59 for "[a]ccident or surprise, which ordinary prudence could not have guarded against"). Specifically, he asserted that the entry of the Amended Decree was irregular because it did not accurately represent the stipulations of the parties and Judge Roth's rulings and because "the process by which the [Amended Decree] was presented to the Court was irregular." Husband further argued that he was entitled to rule 59(e) relief because of the accident or surprise that resulted from the misplacement of the letter during the move of his attorney's office. In the alternative, Husband argued that he was entitled to relief under rule 60(b) of the Utah Rules of Civil Procedure based on "mistake, inadvertence, surprise, or excusable neglect" for essentially the same reasons. *See id.* R. 60(b) (providing that "[o]n motion and upon such terms as are just, the court may in the furtherance of justice relieve a party ... from a final judgment, order, or proceeding" for several enumerated reasons, including "mistake, inadvertence, surprise, or excusable neglect").

¶ 8 In a minute entry dated June 27, 2008, Judge Faust denied the First Rule 60(b) Motion, ruling that Husband's motion was untimely under rule 59(e), *see id.* R. 59(e) ("A motion to alter or amend the judgment shall be served not later than 10 days after the entry of judgment."), and that his "failure to timely object to the proposed Amended Decree [wa]s inexcusable." Judge Faust further reasoned that Husband could not "rely on surprise or mistake because by April 4, 2008, by the latest, [Husband's attorney] was clearly informed that the proposed Amended Decree had been submitted to the Court." He then determined that there was "no rea-

---

**4.** In the Amended Decree, Wife asserted that this is the gross amount she required so that she would net $1,882 per month after taxes.

sonable excuse for not taking action at that point and, having failed to do so, [Husband] effectively waived any right to complain or otherwise object to the Amended Decree or its entry in the proposed form." In conclusion, Judge Faust stated, "Overall, the Court is satisfied that there are no legal or factual grounds to grant [Husband's] requested relief, even assuming that his Motion is timely and procedurally appropriate (a big assumption under these circumstances)." Husband did not appeal from Judge Faust's denial of his First Rule 60(b) Motion, *see Amica Mut. Ins. Co. v. Schettler*, 768 P.2d 950, 970 (Utah Ct.App.1989) (holding that a ruling on a rule 60(b) motion is a separate appealable order), and also did not file a direct appeal challenging the Amended Decree.

¶ 9 Instead, on July 10, 2008, Husband filed a second motion asking for relief under rule 60(b) (Second Rule 60(b) Motion). In the Second Rule 60(b) Motion, Husband asserted that he was entitled to relief based upon either "fraud . . ., misrepresentation, or other misconduct of an adverse party," satisfaction of the judgment, or "any other reason justifying relief from the operation of the judgment." *See* Utah R. Civ. P. 60(b)(3), (5)-(6). He asserted that Wife misrepresented Judge Roth's rulings as stated both in his January 4, 2006 Memorandum Decision and at the 2007 Hearing, including, among other things, the date the permanent alimony award would take effect.

¶ 10 Judge Faust held a hearing on the Second Rule 60(b) Motion on October 23, 2008 (2008 Hearing). At the beginning of the hearing, Judge Faust stated, "I have given some thought, assuming we got over the hurdle and granted the motion—assuming that, I'm not saying we will—but assuming that, of whether or not I would be required to keep and handle it or whether I could approach Judge Roth and have him take a look at it." He then stated, "[W]hat I thought we would do is just simply handle the threshold issue of whether or not to grant the motion for [rule 60(b) or] not." He suggested that he "was tinkering with the idea of asking both of [the parties] to go back one last time and get the order completely consistent with what Judge Roth had asked"

and that if he "needed to step in and handle each issue one at a time, [he] would sanction somebody for whoever was wrong." However, Judge Faust never explicitly granted Husband's Second Rule 60(b) Motion. Instead, the parties agreed to meet and attempt to resolve their disagreements concerning the Amended Decree. In doing so, however, Wife's attorney indicated that Wife was not waiving her legal arguments. Judge Faust responded, "So noted."

¶ 11 The parties were again unable to resolve their differences. Approximately fifteen months later, on January 25, 2010, Husband filed a request to submit for a decision on his Second Rule 60(b) Motion. The notice alerted the trial judge that a prior hearing had resulted in the court "requir[ing] the parties to meet and attempt to resolve their differences," and requested another hearing. By this point, Judge Paul G. Maughan had been assigned to the case. Without further hearing, Judge Maughan denied Husband's Second Rule 60(b) Motion on two grounds in a minute entry dated February 4, 2010. He first determined that the Second Rule 60(b) Motion was "effectively a renewal" by Husband of his First Rule 60(b) Motion and that "there [was] nothing in [Husband's] present motion which could not have been raised in his initial motion for [r]ule 60(b) relief." Judge Maughan then stated that even if he considered the matter on the merits, he was "not persuaded by [Husband's] argument that the Amended [D]ecree [did] not accurately reflect Judge Roth's extensive rulings." In addition, Judge Maughan determined that Husband was "essentially mounting a challenge to the legal merits of certain of Judge Roth's opinions," something not permitted by rule 60(b). Husband now appeals from Judge Maughan's denial of his Second Rule 60(b) Motion.

ISSUES AND STANDARDS OF REVIEW

¶ 12 Husband first argues that we lack subject matter jurisdiction. He asserts that there is no final order in this case because at the 2008 Hearing Judge Faust either granted his Second Rule 60(b) Motion or reopened the judgment, or because the

Amended Decree itself was not a final order. Therefore, Husband claims that there was no final order he needed to attack with his rule 60(b) motions. "The determination of whether a court has subject matter jurisdiction is a question of law." *Amalgamated Transit Union, Local 382 v. Utah Transit Auth.*, 2004 UT App 310, ¶ 6, 99 P.3d 379 (internal quotation marks omitted). "[T]he issue of subject matter jurisdiction is a threshold issue, which can be raised at any time and must be addressed before the merits of other claims." *Houghton v. Department of Health*, 2005 UT 63, ¶ 16, 125 P.3d 860 (internal quotation marks omitted).

██ ¶ 13 In the alternative, Husband argues that if we do have subject matter jurisdiction over his appeal, Judge Maughan exceeded his discretion in denying Husband's Second Rule 60(b) Motion. "We review a district court's denial of a rule 60(b) motion for relief from judgment for an abuse of discretion." *Jones v. Layton/Okland*, 2009 UT 39, ¶ 10, 214 P.3d 859. However, we review any underlying legal questions for correctness. *See Fisher v. Bybee*, 2004 UT 92, ¶ 7, 104 P.3d 1198. Further, we review the interpretation of previous rulings of the trial court for correctness. *See Stevensen v. Goodson*, 924 P.2d 339, 346 (Utah 1996) ("Since appellate courts are in as good a position as trial courts to interpret court rulings, ... we will review the trial court's interpretation of its order for correctness."). Generally, an appeal from a rule 60(b) ruling does not reach the merits of the underlying judgment, "lest rule 60(b) motions become a substitute for timely appeals." *Franklin Covey Client Sales, Inc. v. Melvin*, 2000 UT App 110, ¶ 19, 2 P.3d 451 (emphasis and internal quotation marks omitted).

## ANALYSIS

I. Judge Maughan's Denial of Husband's Second Rule 60(b) Motion Is a Final, Appealable Order.

██ ¶ 14 An appeal may be taken only "from ... final orders and judgments, except as otherwise provided by law." Utah R.App. P. 3(a). "For an order or judgment to be final, it must ... dispose of the subject-matter of the litigation on the merits of the case. In other words, a judgment is final when it ends the controversy between the parties." *Bradbury v. Valencia*, 2000 UT 50, ¶ 9, 5 P.3d 649 (emphasis and internal quotation marks omitted). Husband's arguments for why we lack subject matter jurisdiction have evolved during this appeal. In his opening brief, he asserts that we lack subject matter jurisdiction because Judge Faust "granted [Husband's Second] Rule 60(b) motion" and that at the 2008 Hearing, the parties "agreed to the reopening of this otherwise *final* judgment [ (the Amended Decree) ]." (Emphasis added.) Husband therefore argues that Judge Maughan's denial of his Second Rule 60(b) Motion is not a final order because the motion had already been granted and was not properly before Judge Maughan. In his reply brief, Husband takes a different tack. He asserts that the Amended Decree was not a final order (contrary to his assertion in his opening brief), and that Judge Faust acknowledged this at the 2008 Hearing by indicating that there were issues that may need clarification. Husband therefore posits that because the Amended Decree was not a final order, rule 60(b) was not implicated and, thus, his Second Rule 60(b) Motion was not properly before Judge Maughan. At oral argument, Husband persisted with this assertion, arguing that both of his rule 60(b) motions were procedurally improper because the Amended Decree left issues between the parties unresolved. According to Husband, the Amended Decree is not a final order because it did not resolve all of the issues between the parties and this court has no subject matter jurisdiction to review the denial of the Second 60(b) Motion that he improperly filed seeking relief from a non-final order. We disagree.

██ ¶ 15 We first address Husband's assertions in his reply brief and at oral argument that the Amended Decree was not a final, appealable order; that his own rule 60(b) motions were procedurally improper because there was no final order from which to seek relief; that Judge Maughan did not properly have Husband's Second Rule 60(b) Motion before him; that Judge Maughan's

denial of Husband's Second Rule 60(b) Motion was not a final, appealable order; and, therefore, that we lack subject matter jurisdiction over this appeal. Husband is correct that rule 60(b) may be used only to seek relief from final judgments or final orders. *See Servants of the Paraclete v. Does, I–XVI*, 204 F.3d 1005, 1008 (10th Cir.2000) ("[W]e have jurisdiction to reach the merits of an appeal from a denial of a Rule 60(b) motion, so long as the underlying ruling or judgment was a final decision of the district court." (internal quotation marks omitted)); 12 James Wm. Moore, et al., *Moore's Federal Practice* § 60.23 (3d ed. 1999) ("[A]ll courts readily agree that a 'final' judgment is needed to support a Rule 60(b) motion....").[5] However, for the reasons explained below, the Amended Decree was a final, appealable order and therefore properly subject to a rule 60(b) challenge. *See, e.g., Solaroll Shade & Shutter Corp. v. Bio–Energy Sys., Inc.*, 803 F.2d 1130, 1131 (11th Cir.1986) ("A final judgment under Rule 60(b) is any judgment that is an appealable order."); 12 James Wm. Moore, et al., *Moore's Federal Practice* § 60.23 (3d ed. 1999) ("The standard test for whether a judgment is 'final' for Rule 60(b) purposes is usually stated to be whether the judgment is sufficiently 'final' to be appealed.").

¶ 16 Nor are we persuaded by Husband's argument that Judge Faust's comments at the 2008 hearing that some issues may need clarification—specifically the alimony commencement date and life insurance protection for Husband's alimony obligation[6]—indicate that Judge Faust determined that the Amended Decree was not a final order. Although Judge Faust stated that if he granted the Second Rule 60(b) Motion further discussion of these issues may be appropriate, he did not suggest that the decree did not purport to resolve these issues. Moreover, a review of the Amended Decree reveals that it is final.

¶ 17 "[A]n order is final where the effect of the order ... was to determine substantial rights ... and to terminate fully the litigation." *Foster v. Montgomery*, 2003 UT App 405, ¶ 15, 82 P.3d 191 (omissions in original) (internal quotation marks omitted). "In order for a judgment to be final and start the time for appeal to run, there must be a judgment which is definite and unequivocal in finally disposing of the matter." *Utah State Bldg. Bd. v. Walsh Plumbing Co.*, 16 Utah 2d 249, 399 P.2d 141, 144 (1965). Husband has identified only two issues as "unresolved": (1) the alimony commencement date and (2) the amount of life insurance. However, the Amended Decree resolves each of these issues-albeit in a manner unsatisfactory to Husband. The Amended Decree provides that the permanent alimony award will begin on the date the Amended Decree is entered, which is April 11, 2008, and that Husband will maintain a $250,000 life insurance policy with Wife named as the sole beneficiary in order to cover his alimony obligation. Thus, Husband has identified no substantial rights of the parties that are unresolved by the Amended Decree. *See Foster*, 2003 UT App 405, ¶ 15, 82 P.3d 191. Furthermore, Husband's claim that the Amended Decree is inconsistent with Judge Roth's rulings does not deprive the order of finality. Because the Amended Decree "finally dispos[es] of the matter," *see Walsh Plumbing Co.*, 399 P.2d at 144, and "dispose[s] of the subject-matter of the litigation on the merits," *Bradbury*, 2000 UT 50, ¶ 9, 5 P.3d 649, Husband's rule 60(b) motions sought relief from a final order and were procedurally proper on this basis.

---

5. Because the Utah Rules of Civil Procedure were patterned after the Federal Rules of Civil Procedure, we may look to the federal rules for guidance. *See Drew v. Lee*, 2011 UT 15, ¶ 16, 250 P.3d 48.

6. It appears that Judge Roth did not make a substantive ruling with regard to the amount of life insurance coverage Husband would need to carry to cover his alimony obligation and instead left it to the parties to reach an agreement. Although Husband identifies the life insurance issue as a basis for his argument that the Amended Decree is not final, he does not rely on the life insurance provision on appeal as support for his claim that Judge Maughan erred in denying his Second Rule 60(b) Motion. Instead, he focuses on Judge Roth's ruling on the commencement date of the permanent alimony award. Therefore, we do not substantively consider the life insurance issue and only address it as it relates to Husband's arguments about the finality of the Amended Decree.

¶ 18 With regard to Husband's argument in his opening brief that Judge Faust reopened an otherwise final judgment, the transcript of the 2008 hearing indicates otherwise. Judge Faust neither granted Husband's Second Rule 60(b) Motion nor otherwise reopened the final Amended Decree. Rather, while Judge Faust noted that there may be issues to clarify if he did grant the Second Rule 60(b) Motion, he expressly stated that he was not doing so at that time. Consistent with that approach, Judge Faust acknowledged that Wife was reserving her legal arguments that the Amended Decree should not be set aside, notwithstanding her willingness to negotiate with Husband. Moreover, during the next fifteen months of negotiations, Husband never sought a decision from Judge Faust. And when Husband finally filed a Request to Submit for Decision, he acknowledged that no ruling had been made on the Second Rule 60(b) Motion. Finally, despite Judge Faust's musings at the 2008 Hearing, Husband did not propose an order vacating the Amended Decree, an order granting the Second Rule 60(b) Motion, or any other order that would have had the effect of vacating the Amended Decree or otherwise "reopening the judgment." *See McCollum v. Clothier*, 121 Utah 311, 241 P.2d 468, 472 (1952) ("The only judgment that can be given effect is one entered in accordance with law."). Judge Faust did no more than encourage the parties to negotiate, likely never anticipating that they would do so for over a year. As a result, the Amended Decree was a valid, final order when Husband filed his Notice to Submit the Second Rule 60(b) Motion for decision. *See id.* ("Oral statements of opinion by the trial court inconsistent with the findings and conclusions ultimately rendered do not affect the final judgment."); *see also State v. Ruiz*, 2009 UT App 121, ¶ 10, 210 P.3d 955 ("[A] judge can change his or her mind any time up until the entry of final judgment, which is true even if the judge has taken the case over from another judge ...."), *cert. granted*, 221 P.3d 837 (Utah 2009); *Kunz & Co. v.*

*State Dep't of Transp.*, 949 P.2d 763, 767 (Utah Ct.App.1997) (rejecting party's reliance on the "musings of the trial judge").

¶ 19 In response to Husband's Notice To Submit, Judge Maughan entered a signed Minute Order denying the Second Rule 60(b) Motion and directing that the minute entry "will stand as the Order of the Court." [7] This minute entry is the final judgment for purposes of this appeal, and we have subject matter jurisdiction to review that final order. *See Swenson Assocs. Architects, PC v. State*, 889 P.2d 415, 417 (Utah 1994) ("[A] signed minute entry may be a final order for purposes of appeal ... where the ruling specifies with certainty a final determination of the rights of the parties and is susceptible of enforcement." (emphasis, citations, and internal quotation marks omitted)). *See generally Amica Mut. Ins. Co. v. Schettler*, 768 P.2d 950, 970 (Utah Ct.App.1989) ("It is well settled under Utah law, an order denying relief under Rule 60(b) is a final appealable order.").

¶ 20 Having concluded that we have subject matter jurisdiction, we now proceed with our substantive review, which is limited to Judge Maughan's denial of Husband's Second Rule 60(b) Motion. *See Franklin Covey Client Sales, Inc. v. Melvin*, 2000 UT App 110, ¶ 19, 2 P.3d 451 (holding that an appeal from a rule 60(b) ruling is narrow in scope and addresses only the propriety of the denial or grant of relief from judgment).

## II. The Trial Court Exceeded Its Discretion in Denying Husband's Second Rule 60(b) Motion.

¶ 21 Judge Maughan denied Husband's Second Rule 60(b) Motion on several grounds. Judge Maughan first determined that Husband's Second Rule 60(b) Motion had the effect of renewing his First Rule 60(b) Motion and that the grounds for which he sought relief in his Second Rule 60(b) Motion could have been raised in the first. Although Husband argued in his First Rule

---

7. Although Husband complains that Judge Maughan denied the Second Rule 60(b) Motion without a hearing, there was no requirement that he grant Husband's request for oral argument. *See* Utah R. Civ P. 7(e) (providing that "[t]he court may hold a hearing on any motion," but "shall grant a request for a hearing" on motions for summary judgment and other motions that "would dispose of the action or any claim or defense in the action").

60(b) Motion that the Amended Decree did not accurately reflect Judge Roth's rulings, he did so under the auspices of rule 59 of the Utah Rules of Civil Procedure, and Judge Faust denied Husband's rule 59 arguments as untimely. Husband's rule 60(b) arguments in the first motion, which Judge Faust denied on the merits, were premised on subsection (1) of the rule, allowing relief for "mistake, inadvertence, surprise, or excusable neglect." *See* Utah R. Civ. P. 60(b)(1). Because Judge Faust determined that Husband's counsel's failure to object to the entry of the Amended Decree was not excusable neglect, Judge Faust did not substantively consider Husband's assertions that the Amended Decree was inconsistent with Judge Roth's rulings.

¶ 22 In his Second Rule 60(b) Motion, however, Husband again argued that the Amended Decree was inconsistent with Judge Roth's rulings, this time arguing for relief under subsections (3) and (6) of the rule.[8] *See id.* R. 60(b)(3), (6) ("On motion and upon such terms as are just, the court may in the furtherance of justice relieve a party ... from a final judgment, order, or proceeding for the following reasons: ... (3) fraud ..., misrepresentation or other misconduct of an adverse party; ... or (6) any other reason justifying relief from the operation of the judgment."). It is apparent from the record that Husband had the information from which to challenge the alleged inconsistency of the rulings at the time he filed his First Rule 60(b) Motion. By then, Husband had a copy of the Amended Decree and had been present at the 2007 Hearing during which Judge Roth modified his January 4, 2006 Memorandum Decision with respect to the commencement of alimony. Nothing further occurred between Husband's rule 60(b) motions to provide additional support for his claim that the Amended Decree was inconsistent with Judge Roth's ruling.

¶ 23 As a general rule, parties should allege all known grounds for relief in one motion for relief from judgment under rule 60(b). As this court explained in *Amica Mutual Insurance Co. v. Schettler*, 768 P.2d 950 (Utah Ct.App.1989),

> [t]here must be finality, a time when the case in the trial court is really over and the loser must appeal or give up. Successive post-judgment motions interfere with that policy. And justice is not served by permitting the losing party to string out his attack on the judgment over a period of months, one argument at a time, or to make the first motion a rehearsal for the real thing the next month.

*Id.* at 969 (internal quotation marks omitted). The *Amica Mutual* court concluded that the defendant's second rule 60(b) motion was barred by " 'law of the case' " because the "newly discovered evidence" he asserted as the ground for relief under his second motion "was available ... at the time he filed his first 60(b) motion and with due diligence could have been included in the original motion," which was also based on newly discovered evidence. *See id.* We agree that generally, "[a] party may not file repeated [rule 60(b) ] motions until he either offers a meritorious ground for relief or exhausts himself and the trial court in an effort to do so." *See Carvey v. Indiana Nat'l Bank*, 176 Ind.App. 152, 374 N.E.2d 1173, 1177 (1978); *see also Weinreb v. TR Developers, LLC*, 943 N.E.2d 856, 864 (Ind.Ct.App.2011) (providing that a party appealing from a denial of a second motion made under a similar rule must "establish that the grounds for that additional error were unknown and unknowable to the movant at the time he made the first Rule 60(b) motion" (emphasis and internal quotation marks omitted)).

---

8. Although Husband's Second Rule 60(b) Motion also alleged that he was entitled to relief under subsection (5), *see* Utah R. Civ. P. 60(b)(5) (providing for relief from judgment on the ground that "the judgment has been satisfied, released, or discharged"), he has not argued this ground on appeal. Therefore, we do not consider it. In addition, although Husband alleges on appeal that he is entitled to relief under rule 60(a), *see id.* R. 60(a) (providing that "[c]lerical mistakes in judgments ... may be corrected by the court at any time"), our review of the record indicates that Husband did not raise this as a basis for relief in his Second Rule 60(b) Motion. Consequently, we do not address it further. *See Smith v. Four Corners Mental Health Ctr., Inc.*, 2003 UT 23, ¶ 19, 70 P.3d 904 (providing that, with limited exceptions, "[w]e will not address any new arguments raised for the first time on appeal" (internal quotation marks omitted)).

¶ 24 However, rule 60(b) is an equitable rule that allows courts to balance the competing "concerns that final judgments should not be lightly disturbed and that unjust judgments should not be allowed to stand." *Laub v. South Cent. Tel. Ass'n*, 657 P.2d 1304, 1306 (Utah 1982); *see also* 12 James Wm. Moore, et al., *Moore's Federal Practice* § 60.02[2] (3d ed. 1999) (providing that rule 60(b) allows "a court to grant relief from a judgment in circumstances in which the need for truth outweighs the value of finality in litigation"). Indeed, "[t]he allowance of a vacation of judgment is a creature of equity designed to relieve against harshness of enforcing a judgment, which may occur through procedural difficulties, the wrongs of the opposing party, or misfortunes which prevent the presentation of a claim or defense." *Boyce v. Boyce*, 609 P.2d 928, 931 (Utah 1980); *see also id.* at 931–32 ("A liberal standard for application of Rule 60(b) in divorce cases is justified by the doctrine of the continuing jurisdiction that a divorce court has over its decrees. Clearly, a court should modify a prior decree when the interests of equity ... require."). We are convinced that this case presents sufficiently exceptional circumstances to justify equitable relief, despite Husband's failure to present all known grounds for relief in his First Rule 60(b) Motion.

¶ 25 In his denial of Husband's Second Rule 60(b) Motion, Judge Maughan stated that he was not persuaded that the Amended Decree was an inaccurate reflection of Judge Roth's "extensive rulings." Judge Maughan, however, did not have the benefit of the written transcript of either the 2007 or 2008 Hearings. Our review of the record, including these transcripts, indicates that the Amended Decree submitted by Wife and signed by Judge Faust directly conflicts with Judge Roth's ruling at the 2007 Hearing that the permanent alimony award would begin on January 4, 2006. Judge Roth's Memorandum Decision explicitly contemplated that permanent alimony would last for the length of the marriage, 114 months. He further ordered that Husband would be entitled to one year of credit for payment of temporary alimony. This had the effect of reducing the duration of permanent alimony to 102 months, a number the parties stipulated to at the 2007 Hearing. However, due to the length of time that had passed since his January 2006 Memorandum Decision and Husband's failure to comply completely with the terms of that decision, Judge Roth modified the date upon which permanent alimony would begin. At the 2007 Hearing, Judge Roth explicitly referred to his January 4, 2006 Memorandum Decision, stating that the $1,882 net alimony award would begin "as of the date of the ruling[;] ... it will be the gross amount of that [$]1,882 as of January." Although this was a departure from the alimony commencement date of June 2004 in his Memorandum Decision, Judge Roth contemplated that the later start date would account for arrearages that had accrued during the nearly eighteen months between the end of trial and the 2007 Hearing, stating, "And that would ... satisfy, it seems to me, my concerns about what's happened here, while still making implementation of my ruling, which was thought out in some length in terms of what was appropriate in terms of ... alimony and put that into place." [9]

¶ 26 In urging us to affirm, Wife asserts that Judge Roth ordered the permanent alimony award to begin at the time the Amended Decree was entered. In support of this assertion, Wife points to language earlier in the proceedings where the parties discussed the division of retirement accounts. After the parties discussed the date for the division of the parties' retirement accounts and concerns about Husband's failure to assume responsibilities under the Memorandum Decision, Judge Roth stated generally that the "provisions" of his decision would take effect when the final decree was signed. He then identified the date of the Memorandum Decision as the effective date for the division of the parties' retirement accounts. Reflecting their understanding that Judge Roth had not yet ruled on the issues relating to alimony,

---

9. While Wife acknowledged this language in her response to Husband's Second Rule 60(b) Motion, she did so only to assert that arrearages would be calculated based on the permanent alimony beginning in January 2006, but inexplicably insisted that the 102–month permanent alimony period would not begin until the Amended Decree was entered, i.e., in April 2008.

the parties subsequently asked Judge Roth to address the commencement date for the permanent alimony award in order to determine any post-trial arrearages owed by Husband. After considering Wife's concerns about Husband's failure to comply fully with the terms of the Temporary Order, Judge Roth clarified that Wife would be entitled to the net amount of $1,882 per month for 102 months, beginning on January 4, 2006, the date of his Memorandum Decision.[10] Given the identifiable amount of the permanent alimony figure and Judge Roth's indication that payment would begin as of his January ruling, it is difficult to understand how the parties could have been unable to agree on the form of the order for fifteen months.[11]

¶ 27 The permanent alimony commencement date of April 11, 2008, that Wife inserted into the Amended Decree awards Wife twenty-eight extra months of permanent alimony, resulting in a windfall to Wife of approximately $70,000 and an award of 130 months of permanent alimony, despite Judge Roth's award of such alimony only for the length of the 114–month marriage.[12] Furthermore, while Husband bears much of the responsibility for not filing timely objections to the proposed decree and not appealing either the Amended Decree or the denial of his First Rule 60(b) Motion, there are other factors that contributed to this result. Due to the inordinate amount of time this divorce action has lingered—eight years and counting—at least four different trial judges have been assigned to the case.[13] Once Judge Roth, the trial judge who heard the evidence and issued the ruling to be memorialized by the parties, was reassigned, his successors were left in the difficult position of trying to sort out the post-entry objections to the Amended Decree without the benefit of having participated in those proceedings. While the rotation of judicial assignments in the district courts is not per se a basis for relief from judgment, the task of the successor judges was complicated by Wife's inclusion of terms in the Amended Decree that counsel conceded at oral argument before this court were intended merely as a starting point for further discussion. Because Husband failed to file the objections to the Amended Decree that Wife had anticipated, Judge Faust had no reason to suspect that the Amended Decree did not accurately reflect Judge Roth's ruling and, instead, included Wife's best case scenario on the commencement of alimony. Under the unique facts and circumstances present here, we conclude that Husband's Second Rule 60(b) Motion should be considered on the merits so as to prevent Wife from enjoying a windfall that is, at least in

---

10. After Judge Roth's ruling on the effective date of the permanent alimony award, Husband's attorney clarified, "If Your Honor is actually saying that it's from the date of the [January 2006] order, then I think our calculation application [of post-trial arrearages] is closer to what's correct. But I believe that [Wife's attorney] and I can go through and we can identify those numbers. That's a matter of the numbers." Judge Roth affirmed his intent to modify the effective date of the permanent alimony award by responding, "Right."

11. The practice of adopting aggressive interpretations of Judge Roth's ruling was not limited to Wife. Even on appeal, Husband insists that the commencement date for permanent alimony should be controlled by the Memorandum Decision, arguing that Judge Roth "made no rulings [at the 2007 Hearing] altering [his] earlier decision that alimony should begin in June 2004." Our review of the record convinces us that Judge Roth expressly adopted a January 2006 date for the commencement of permanent alimony, thereby abandoning the June 2004 date in his prior Memorandum Decision.

12. As an experienced trial judge, Judge Roth was likely well aware of Utah Code section 30–3–5(8)(h), which mandates specific findings in order to award alimony for a duration longer than the length of the marriage. See Utah Code Ann. § 30–3–5(8)(h) (Supp.2010) ("Alimony may not be ordered for a duration longer than the number of years that the marriage existed unless, at any time prior to termination of alimony, the court finds extenuating circumstances that justify the payment of alimony for a longer period of time."). Yet Judge Roth entered no findings that would justify an award of alimony for longer than 114 months. Given this lack of findings, the fact that the commencement date in the Amended Decree would have violated section 30–3–5(8)(h) supports our conclusion that the Amended Decree was contrary to Judge Roth's ruling.

13. The original divorce petition was filed before Judge Stephen Henriod.

part, the result of her use of the proposed decree as a negotiation salvo.[14]

¶ 28 Having decided that Husband's Second Rule 60(b) Motion may be considered on the merits, we now address whether Husband is entitled to relief from that decree under rule 60(b). In particular, we address Husband's argument under rule 60(b)(6), which allows a court to set aside a final order or judgment for "any other reason justifying relief from the operation of the judgment." *See* Utah R. Civ. P. 60(b)(6). "Relief under [rule 60(b)(6) ] embodies three requirements: First[,] that the reason be one other than those listed in subdivisions (1) through [ (5) ]; second, that the reason justify relief; and third, that the motion be made within a reasonable time."[15] *Richins v. Delbert Chipman & Sons Co.*, 817 P.2d 382, 387 (Utah Ct.App.1991) (emphasis and internal quotation marks omitted). Relief under subsection (6) "should be very cautiously and sparingly invoked by the [c]ourt only in unusual and exceptional circumstances." *Id.* (internal quotation marks omitted). We believe that this case presents such exceptional circumstances and that, therefore, Judge Maughan exceeded his discretion in denying Husband's Second Rule 60(b) Motion.

¶ 29 First, the grounds listed in subsections (1) through (5) of rule 60(b) do not apply here. *See Kunzler v. O'Dell*, 855 P.2d 270, 274 (Utah Ct.App.1993) (affirming grant of relief under rule 60(b)(7), renumbered as rule 60(b)(6), where court was made aware that "the judgment did not accurately memorialize the court's legal determination"); *see also Margis v. Lietz*, 2003 UT App 106U, para. 5, 2003 WL 21293822 (mem.) ("Relieving a party of a final judgment because it directly conflicts with a previous final judgment is not covered by subsections 1 through 5. Thus, it falls under subsection 6, 'the residuary clause.' "). Second, although rule 60(b)(6) cannot be used to rule on the merits of the underlying case, *see Franklin Covey Client Sales, Inc. v. Melvin*, 2000 UT App 110, ¶ 19, 2 P.3d 451, the rule may be used to relieve a party from a final judgment that conflicts with a court's previous ruling, *see Kunzler*, 855 P.2d at 274 (affirming grant of rule 60(b) motion where "[t]he court, without the benefit of a survey, relied on an erroneous exhibit that both parties testified from" to fix the boundaries of a prescriptive easement); *see also Margis*, 2003 UT App 106U, para. 6, 2003 WL 21293822 (mem.) (affirming grant of rule 60(b) motion where "the trial court used rule 60(b)(6) to set aside an order that directly contradicted its previous judgment").

¶ 30 Second, we conclude that the unusual circumstances present here justify relief. The commencement date in the Amended Decree directly and substantively conflicts with Judge Roth's oral ruling at the 2007 Hearing. By virtue of the inclusion of a commencement date that is difficult to support from a review of the record, Wife is the beneficiary of twenty-eight months of permanent alimony in excess of Judge Roth's ruling, totaling nearly $70,000. Additionally, the duration of permanent alimony as provided in the Amended Decree exceeds the length of the marriage in contradiction of Judge Roth's unambiguous ruling to the contrary. While we do not condone Husband's lack of diligence in challenging the terms of the Amended Decree, both before and after it was entered, the principles of equity that are embodied in rule 60(b) convince us that a decree so far removed from the ruling of the court should not stand.

---

14. Permission to prepare an order reflecting a ruling from the bench should not be treated by either party as an opportunity to negotiate for a "wish list" of preferred terms. Instead, both parties should attempt to agree on an accurate recitation of the trial court's actual ruling. *See* Utah Standards of Professionalism and Civility 14–301(8) ("When permitted or required by court rule or otherwise, lawyers shall draft orders that accurately and completely reflect the court's ruling."). If the parties cannot agree on the substance of the ruling after a reasonable effort, further clarification should be sought from the trial court.

15. Rule 60(b)(6) was previously numbered rule 60(b)(7). "[H]owever, there is now no rule 60(b)(7).... Current subsection (6) was previously numbered as subsection (7) until a 1998 amendment to the rule eliminated former subsection (4), at which time the former subsection (7) became the current subsection (6)." *Oseguera v. Farmers Ins. Exch.*, 2003 UT App 46, ¶ 6 n. 8, 68 P.3d 1008.

¶31 Third, Husband made the Second Rule 60(b) Motion within a reasonable time. Husband brought his Second Rule 60(b) Motion approximately three months after the Amended Decree was entered, and only thirteen days after the First Rule 60(b) Motion was denied. Although we again caution against serial rule 60(b) motions, where we have determined that the circumstances here are sufficiently compelling to warrant substantive consideration of the second motion, we also conclude that Husband brought his Second Rule 60(b) Motion within a reasonable time.

¶32 Based on the foregoing, we conclude that Husband is entitled to relief from the Amended Decree and we therefore vacate it. In doing so, we are sensitive to the difficulties faced by the trial judges who successively assumed the responsibilities for this matter during the four years between Judge Roth's initial Memorandum Decision and Husband's notice to submit the Second Rule 60(b) Motion for decision. Neither of these judges were privy to the trial evidence or the thought processes of Judge Roth, which were elucidated by the transcript containing his exact language included in the record on appeal, but not available to Judge Maughan. However, we are left with a firm conviction that the strident positions of the parties inordinately delayed resolution of these issues, thereby adding to the loss of continuity caused by successive trial judges, and that the parties' practice of staking out aggressive negotiation positions resulted in a final order that does not reflect the ruling of the trial court. Therefore, we hold that the trial court exceeded its discretion in denying Husband's Second Rule 60(b) Motion.

## CONCLUSION

¶33 Because the Amended Decree was a final, appealable order from which Husband properly sought rule 60(b) relief and because Judge Faust did not grant Husband's Second Rule 60(b) Motion or otherwise reopen the judgment at the 2008 Hearing, Judge Maughan's denial of Husband's Second Rule 60(b) Motion is a final, appealable order for purposes of this appeal. Because Husband appeals from this final judgment, we have subject matter jurisdiction. Although Husband should have identified all known grounds for relief in his First Rule 60(b) Motion, the unique circumstances of this case warranted consideration of the merits of that second motion. Because the Amended Decree directly and substantively conflicts with Judge Roth's ruling at the 2007 Hearing regarding the permanent alimony commencement date and would result in a nearly $70,000 windfall to Wife due to her inclusion of a negotiation position in the proposed order, we conclude that the trial court exceeded its discretion in denying relief from that decree under rule 60(b)(6). Therefore, we reverse the denial of Husband's Second Rule 60(b) Motion, vacate the Amended Decree, and remand to the trial court for proceedings to enter a final decree of divorce that accurately reflects Judge Roth's ruling so that this eight-year saga can be concluded.

¶34 Reversed and remanded.

¶35 WE CONCUR: JAMES Z. DAVIS, Presiding Judge, and J. FREDERIC VOROS JR., Judge.